Francelle **DORMAN**, Plaintiff–Appellee,

v.

C. Robert **SATTI** and Lester J. Forst, Defendants–Appellants.

No. 87, Docket 88–7390.

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 1988.

Decided Dec. 7, 1988.

Kathleen Eldergill, Manchester, Conn. (Beck & Eldergill, Manchester, Conn., of counsel), for plaintiff-appellee.

Harry Weller, Deputy Asst. State's Atty., Wallingford, Conn. (Joseph I. Lieberman, Atty. Gen., State of Conn., L.D. McCallum, Asst. Atty. Gen., Wallingford, Conn., of counsel), for defendants-appellants.

Before OAKES, MINER and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

In 1985, the Connecticut legislature enacted, as part of the state's penal code, the Hunter Harassment Act which provides as follows:

No person shall: (1) *Interfere* with the lawful taking of wildlife by another person, or *acts in preparation* for such taking, with intent to prevent such taking; or (2) *harass* another person who is engaged in the lawful taking of wildlife or *acts in preparation* for such taking.

Conn.Gen.Stat. § 53a–183a (emphasis added). The Act, a class C misdemeanor, subjects the offender to a fine and/or imprisonment for up to three months. *Id.* §§ 53a–28; 53a–36(3).

On this appeal from the United States District Court for the District of Connecticut (Nevas, *J.*), we are asked to decide 1) as a preliminary matter, whether we should certify the statutory terms "interfere," "harass," and "acts in preparation" to the Connecticut Supreme Court for definitive

interpretation under state law, and 2) assuming instead that we reach the merits, whether the district court properly determined that the Act, on its face, is unconstitutionally vague and overbroad under the freedom of speech clause of the first amendment. For the reasons that follow, we deny defendants-appellants' motion to certify questions of state law to the Connecticut Supreme Court and affirm the judgment of the district court granting plaintiff-appellee's motion for summary judgment declaring the Act unconstitutional on its face.

## BACKGROUND

On January 30, 1986, plaintiff-appellee Francelle Dorman, a resident of Niantic, Connecticut, was arrested during the goose-hunting season for speaking to several hunters on state forest property located near her home. The adjoining state lands contain marshland inhabited by a variety of waterfowl. Plaintiff is morally opposed to the hunting and killing of animals, and consequently on the day of her arrest, she approached several hunters in the marsh and attempted to dissuade them from their plans to hunt the waterfowl. By her own admission, Dorman "walked with the hunters ..., [and] spoke to them about the violence and cruelty of hunting, of the beauty of the waterfowl and [of] their right to live peacefully and without harm." The hunters regarded her behavior as "antics," advised plaintiff that her actions were unlawful, and when she refused to leave, summoned a state law enforcement officer who arrested her for violating the Hunter Harassment Act, Conn.Gen.Stat. § 53a–183a (the "Act").

Following her arrest, the state prosecutor requested that the court dismiss the criminal charges, apparently conceding that the arrest of Dorman had been premature since she had only been "talking about what she was going to do to interfere with hunting geese." On April 22, 1986, the court granted the state's request and dismissed the criminal charges.

Four months later, Dorman filed the instant action in the district court under 42 U.S.C. § 1983 against defendants-appellants C. Robert Satti, chief prosecutor, and Lester J. Forst, the Commissioner of Public Safety. Plaintiff alleged, *inter alia*, that the actual arrest and the threat of future enforcement of the Act violated her rights under the first and fourteenth amendments, and she sought a judgment declaring the Act facially invalid and injunctive relief prohibiting the Act's enforcement. On cross-motions for summary judgment, the district court granted plaintiff's motion, holding as a matter of law that the Act, as written, is unconstitutionally vague and overbroad. *Dorman v. Satti*, 678 F.Supp. 375 (D.Conn.1988). In May 1988, defendants filed a timely notice of appeal on the merits as well as a motion in this court under Second Circuit rule § 0.27 seeking certification to the Connecticut Supreme Court of the statutory terms "interfere," "harass," and "acts in preparation."

## DISCUSSION

### I. *Certification.*

Second Circuit rule 0.27 provides that certification to the highest court of a state is appropriate 1) "[w]here authorized by state law" and 2) in order to resolve an "unsettled and significant question of state law that will control the outcome of a case pending before this Court." The Connecticut certification statute adopted in 1985 provides, *inter alia*, that a "court of appeals of the United States" may certify "questions of law ... which may be determinative of the cause then pending ... and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of th[e] state." Conn.Gen.Stat. § 51–199a(b).

The United States Supreme Court has encouraged the use of state certification procedures as an alternative to "the more cumbersome and ... problematic abstention doctrine." *See Virginia v. American Booksellers Ass'n, Inc.,* — U.S. —, 108 S.Ct. 636, 644, 98 L.Ed.2d 782 (1988). The purpose of certification is to obtain the benefit of an authoritative construction from the state's highest court before proceeding to the merits of the dispute. This

may further the interests of federal/state comity by providing the state court with the opportunity to rule on an issue of state law before being precluded from doing so by a contrary federal court judgment. The state court's interest in accepting a certified question for review is particularly strong when it has not yet had the opportunity to interpret the pertinent statutory language. *Id.*, 108 S.Ct. at 645. Nevertheless, issues of state law "are not to be routinely certified to the highest courts of New York or Connecticut simply because a certification procedure is available. The procedure must not be a device for shifting the burdens of this Court to those whose burdens are at least as great." *Kidney v. Kolmar Laboratories, Inc.*, 808 F.2d 955, 957 (2d Cir.1987).

■ The test for determining the appropriateness of employing the certification procedure is whether the statute in question is "readily susceptible" to the proffered narrowing construction that would render an otherwise unconstitutional statute constitutional. *See American Booksellers*, 108 S.Ct. at 645; *Bellotti v. Baird*, 428 U.S. 132, 148, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975); *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). In attempting to satisfy the "readily susceptible" standard, defendants in the instant case rely by analogy on the Connecticut Supreme Court's recent consideration of vagueness and overbreadth challenges to the state's criminal interference with a police officer statute, Conn.Gen.Stat. § 53a-167a. *See State v. Williams*, 205 Conn. 456, 534 A.2d 230 (1987). That statute provides that it is unlawful to "interfer[e]," *i.e.*, to "obstruct[ ], resist[ ], hinder[ ] or endanger[ ]," a police officer "in the performance of his duties." In *Williams*, the Connecticut Supreme Court held that the statute was not unconstitutionally overbroad or vague because the act defines the term "interfer[e]" and limits its reach to conduct "intended to obstruct the police in the performance of their duties." *Id.*, 534 A.2d at 238. According to the

*Williams* court, "a reasonable interpretation of the statute confines its scope to conduct that amounts to meddling in or hampering the activities of the police in the performance of their duties." *Id.* The court distinguished the Connecticut statute from the ordinance struck down by the United States Supreme Court in *Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), which prohibited interfering with a police officer " 'in *any* manner ... in the execution of his duty,' " 107 S.Ct. at 2506 (emphasis added), by finding that the Connecticut statute did not contain such a "broad sweep" of language. 534 A.2d at 238.

■ In construing the Connecticut statute to proscribe only physical conduct and "fighting" words, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942), the court in *Williams* was able to fit the statute within the constitutional parameters of free speech. Defendant contends that the Connecticut Supreme Court should be given a similar opportunity to narrowly construe the Hunter Harassment Act. We disagree.

For this court to certify a question to the Connecticut Supreme Court, the Hunter Harassment Act must be "readily susceptible" to limiting interpretation. The district court found that the statute was "not susceptible to curative construction." 678 F.Supp. at 384. Although we are not bound by the district court's ruling, *Boos v. Barry*, — U.S. —, 108 S.Ct. 1157, 1162-63, 99 L.Ed.2d 333 (1988); *American Booksellers*, 108 S.Ct. at 643-44; *Elkins v. Moreno*, 435 U.S. 647, 662 n. 16, 98 S.Ct. 1338, 1347 n. 16, 55 L.Ed.2d 614 (1978), we agree with its determination. As Judge Nevas noted,

[t]he lesson of *Williams* does not apply to the Hunter Harassment Act.· First, because the Act fails to define the nature of the interference it proscribes, its language implicitly sweeps as broadly as that of the *Houston* ordinance, and it thus cannot be saved by a limiting construction as was Section 53a-167a. Second, in failing—by virtue of its "acts in

preparation" clause—to limit the proscribed interference as to time and place, the Act carries its effect far beyond the proper scope of government regulation. 678 F.Supp. at 381–82.

Defendants cite language from *American Booksellers* to suggest that certification is appropriate whenever a state's highest court has not had an opportunity to rule on the pertinent statutory language. 108 S.Ct. at 645. While we agree that *American Booksellers* counsels in favor of expanded use of state certification procedures, we do not believe that it stands for the proposition that certification should be pursued whenever available. *Cf. Houston v. Hill,* 107 S.Ct. at 2514; *Kidney,* 808 F.2d at 957. The Supreme Court's willingness in *American Booksellers* to certify the proffered narrowing construction was a consequence of its decision to certify another question to the Virginia Supreme Court. Consequently, the Supreme Court found it unnecessary to decide whether the Virginia statute was subject to curative construction. The Court did not do away with the rule that certification is appropriate only when the statute is susceptible to a narrowing construction that will avoid the constitutional infirmity. *See Bellotti,* 428 U.S. at 148, 96 S.Ct. at 2866.

In sum, although the Supreme Court has required certification in cases where the state court could decide between two plausible interpretations of an ambiguous statute, *e.g., American Booksellers,* 108 S.Ct. at 644; *Bellotti,* 428 U.S. at 144–48, 96 S.Ct. at 2864–67, and the parties in this case do offer conflicting interpretations of key terms in the Act, the Connecticut court would be in no better position than a federal court to decide which interpretation is correct. This is because, unlike the "unusual circumstances" presented in *American Booksellers* as well as in *Bellotti,* the statute in this case is so imprecise and indefinite that it is subject to any number of interpretations. The terms "interfere," "harass," and "acts in preparation" do not admit of distinct limiting constructions. They can mean anything. For this court to ask the Connecticut Supreme Court to consider construing the statute to apply only

to "core criminal conduct," as defendants would have it, would be tantamount to asking the Connecticut court "if it would care in effect to rewrite [the] statute." *Houston v. Hill,* 107 S.Ct. at 2515.

In view of the foregoing, we deny defendants' motion to certify questions of state law to the Connecticut Supreme Court.

## II. *The Merits.*

When considering a facial challenge to the overbreadth and vagueness of a statute as measured against the first amendment, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). An act's overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2918. The purported vagueness must be such that the statute is incapable of "giv[ing] the person of ordinary intelligence a reasonable opportunity to know what is prohibited" by failing to provide "explicit standards" ensuring that it is not arbitrarily enforced. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). Defendants argue that the statutory terms the district court found overbroad and vague "can and should be read in a manner consistent with the First Amendment." Appellants' Brief at 4. Plaintiff contends that because the Hunter Harassment Act does not define what constitutes interference or harassment and because the "acts in preparation" clause is not limited to any time, place or circumstance, the Act on its face impermissibly regulates protected free speech.

■ Plaintiff's facial attack on the constitutionality of the Act must be considered in light of the scope of the challenged government regulation. The Supreme Court has determined that statutory language prohibiting acts such as interference

or harassment encompasses verbal as well as physical conduct. *Houston v. Hill*, 107 S.Ct. at 2511–12. Like the city ordinance struck down in *Hill*, the statute at issue here "deals not with core criminal conduct, but with speech." *Id.* at 2508. Consequently, the right of the government to prohibit such communicative expression is circumscribed by the first amendment. *See Perry Educ. Ass'n v. Perry Local Educs. Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). "For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.* (citations omitted).

■ Although the Act would appear by its terms to be content-neutral, *cf. Boos v. Barry*, 108 S.Ct. at 1162–64 (District of Columbia statute that prohibits display of picket signs *critical* of foreign government within 500 feet of that country's embassy is a content-based restriction), it clearly is designed to protect hunters from conduct— whether verbal or otherwise—by those opposed to hunting. *See* 678 F.Supp. at 377 & n. 2; *cf. Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 68–48, 106 S.Ct. 925, 928–929, 89 L.Ed.2d 29 (1986) (content-neutral statute is one not aimed principally at suppression of *speech* on the basis of its content). Of course, to the extent that the Hunter Harassment Act can be considered content-based, it cannot withstand strict scrutiny. There is no showing that protecting hunters from harassment constitutes a compelling state interest. *Cf. Boos*, 108 S.Ct. at 1164 (first amendment protects "insulting, and even outrageous, speech in order to provide 'adequate "breathing space"'" for exercise of right of free expression) (quoting *Hustler Magazine, Inc. v. Falwell*, — U.S. —, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988); *NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963)). Nor is the statute

narrowly drawn to serve any putative compelling state interest. Indeed, the Act "criminalizes a substantial amount of constitutionally protected speech." *Houston v. Hill*, 107 S.Ct. at 2512.

Taking the statutory terms "interfere," "harass," and "acts in preparation" at face value, even as content-neutral restrictions they cannot be justified as reasonable time, place or manner regulations of speech. *See Frisby v. Schultz*, — U.S. —, 108 S.Ct. 2495, 2500–01, 101 L.Ed.2d 420 (1988); *see also Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984); *Cox v. New Hampshire*, 312 U.S. 569, 575–76, 61 S.Ct. 762, 765–66, 85 L.Ed. 1049 (1941). An "act[ ] in preparation" is nowhere defined in the statute, and thus the Act reaches a wide range of activities confined to no particular time, place or manner. *Cf. State v. Williams*, 534 A.2d at 238 (upholding state statute proscribing interference with police officer *in the performance of his duties*). As the district court recognized,

> the "acts in preparation" clause can be reasonably read to encompass buying supplies long before the actual hunt takes place ….; consulting a road map …; making plans during a workplace coffee break; or even getting a good night's sleep before embarking on a hunting trip.

678 F.Supp. at 383. Accordingly, the Hunter Harassment Act is not the type of properly tailored statute, *Houston v. Hill*, 107 S.Ct. at 2511, that can be interpreted narrowly to avoid constitutional infirmity. *Cf. Frisby*, 108 S.Ct. at 2501.

### CONCLUSION

Because we agree with Judge Nevas that Connecticut's Hunter Harassment Act is not subject to curative construction and as written is substantially overbroad and vague, defendants' motion to certify questions of state law to the Connecticut Supreme Court is denied, and the judgment of the district court declaring the Act unconstitutional on its face is affirmed.

MINER, Circuit Judge, dissenting:

Because I believe that we should, if possible, have the benefit of the Connecticut Supreme Court's construction of the statute at issue before we pass on the merits of plaintiff's claim that the legislation does not measure up to federal constitutional requirements, I respectfully dissent.

The Hunter Harassment Act, duly enacted by the legislature and approved by the Governor of the State of Connecticut, prohibits interference with and harassment of those engaged in lawfully taking, or preparing to take, wildlife. The majority concludes that the words "interfere," "harass," and "acts in preparation" contained in the Act are not readily susceptible to the limiting construction necessary to preserve the constitutionality of the statute. I think that this determination is unwarranted.

The word "interfere" in a statute imposing a criminal penalty for interfering with a police officer easily yielded to an interpretation by the Connecticut Supreme Court that preserved the constitutionality of the statute. *State v. Williams,* 205 Conn. 456, 534 A.2d 230 (1987). The court in *Williams* confined the prohibited conduct "to meddling in or hampering the activities of the police in the performance of their duties." 534 A.2d at 238. A similar interpretation of the Hunter Harassment Act, substituting hunting activities for police duties, could save the Act from overbreadth and vagueness concerns. I cannot agree with the district court that the Act sweeps as broadly as the ordinance struck down in *Houston v. Hill,* 107 S.Ct. 2502 (1987). The prohibition on interrupting a police officer *in any manner* in the *Houston* ordinance left no room for any construction that would have saved the ordinance without rewriting it.

Similarly, "harassment" has been afforded a restrictive definition under Connecticut law. A statute prohibiting harassment by written and telephonic communications requires evidence of an intention to annoy or alarm another person. Conn.Gen.Stat. § 53a–183 (1987). New York has a similar statute, which is entitled "Aggravated harassment." N.Y.Penal Law § 240.30

(McKinney Supp.1988). Indeed, the offense of harassment is described by reference to specific conduct in various penal codes. *See, e.g.,* N.Y.Penal Law § 240.25(1)–(5) (McKinney 1980); *see also id.* Practice Commentary following (referring to American Law Institute's Model Penal Code). There is therefore no reason why the Connecticut Supreme Court could not define harassment in the context of the Hunter Harassment Act without impinging on first amendment rights.

As to the term "acts in preparation," a narrowing construction might restrict the preparatory acts to those directly, unequivocally and immediately related to the act of taking wildlife. Here again, a construction considerate of first amendment rights could save the statute. Moreover, the Hunter Harassment Act is subject to pruning by the Connecticut Supreme Court of any parts found to be contrary to law. The Connecticut severability statute allows for the excision of invalid portions of the Act without effect on the valid remainder. Conn.Gen.Stat. § 1–3 (1987); *State v. Golino,* 201 Conn. 435, 518 A.2d 57 (1986).

In *Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976), the United States Supreme Court directed certification to the Supreme Judicial Court of Massachusetts of "questions pertaining to construction of a state statute that was susceptible to multiple interpretations, one of which would avoid or substantially modify a federal constitutional challenge," *Virginia v. American Booksellers Ass'n,* —— U.S. ——, 108 S.Ct. 636, 644, 98 L.Ed.2d 782 (1988). Similarly, a constitutional infirmity in the Act challenged here might be avoided by a decision of the Connecticut Supreme Court. If the term "harmful to juveniles," as defined in a Virginia statute prohibiting the display of certain visual or written materials, is considered subject to a narrowing construction by the Virginia Supreme Court after certification, *American Booksellers, supra,* then the objectionable terms in the Connecticut Hunter Harassment Act certainly should be capable of the sort of limiting construction that would meet constitutional challenges.

I would certify to the Connecticut Supreme Court questions as to the state law definitions of "interfere," "harass," and "acts in preparation" as used in the Hunter Harassment Act, before proceeding to a consideration of the merits of plaintiff's claim. I also would certify a question as to whether the Connecticut Supreme Court would excise any portion of the Act on state law grounds.