Freddie HAMILTON, Administratrix of the Goods, Chattels, and Credits of Njuzi Ray, Deceased, and Individually, Katina Johnstone, Administratrix of the Goods, Chattels, and Credits of David Johnstone, Deceased, and Individually, Diane Benjamin, as Administratrix of the Estate of Donald Boyd, Deceased, and Individually, Delores Boyd, as Administratrix of the Estate of Donald Boyd, Deceased, and Individually, Anne Cargill, as Administratrix of the Estate of David Cargill, Deceased, and Individually, Veronica Costa, as Administratrix of the Estate of Christopher Malachi, Deceased, and Individually, Frances Davis, as Administratrix of the Estate of Frankie Davis, Deceased, and Individually, Mary Konapacki, as Independent Administrator of the Estate of Amy Elizabeth Merkes, Deceased, and Individually, Shuji Matsuura, as Personal Representative of the Estate of Go Matsuura, Deceased, and Individually, Alice Norris, as Independent Administrator of the Estate of Rolanda Lakesia Marshall, Deceased, and Individually, Yvonne Pope as Administratrix of the Estate of Stepfone Herbin, Deceased, and Individually, Michael Robbins, Maria Santana, as Adminis-

tratrix of the Estate of Robert Robles, Deceased, and Individually, Andrea Slade–Lewis, as Administratrix of the Estate of Damon Slade, Deceased, and Individually, Adrienne Stanford, as Administrator to Collect of the Estate of Damien Anthony Stanford, Deceased, and Individually, Koici Sunada, as Representative of the Estate of Kei Sunada, Deceased, and Individually, Veronica Trott, as Administratrix of the Estate of Leroy Michael Sabb, Deceased, and Individually, Thomas Vandenberk, as Administrator to Collect the Estate of Thomas C. Vandenberk II, Deceased, and Individually, and Diane Zaretsky, as Administratrix of the Estate of Marvin Zaretsky, Deceased, and Individually, Plaintiffs,

Gail Fox and Stephen Fox, Plaintiffs–Appellees,

v.

BERETTA U.S.A. CORP., Taurus International Manufacturing, Inc., American Arms, Inc., And Colt's Manufacturing Co., Inc., Defendants–Appellants,

Accu–Tek, American Derringer Corporation, A.M.T., Armsco Distributing Co., doing business as Armsco Distributor, Arms Corporation of America, Arms Technology, Astra–Uncera Y Cia, S.A., Browning Arms Co., Bryco Arms, Caspian Arms, Inc., Century International Arms, Inc., Charco, Inc., formerly known as Charter Arms Corp., Davis Industries, Inc., European American Armory, Doing Business as E.A.A. Corp., Emco, Inc., Excam, Inc., Freedom Arms Co., Firearms Import and Export Corp., Glock, Inc., Grendel, Inc., H & R 1871, Inc., formerly known as Haskell Mfg., Inc., Harrington & Richardson, International Armament Corporation, doing business as Interarms Industries, Inc., International Distributors, Inc., Jennings Firearms, Inc., K.B.I., Inc., Llama Gabilondo Y

Cia S.A., Lorcin Engineering, Marlin Firearms, Inc., Navegar, Inc., doing business as Intratec Firearms, New England Firearms, Inc., formerly known as Harrington & Richardson, Para Ordnance Mfg., Inc., Phoenix Arms, Inc., also known as Raven Arms, Inc., R.G. Industries, Inc., Ram-Line Corp., Remington Arms Co., Inc., Savage Arms Corp., L.W. Seecamp, Stosseger Industries, Sturm, Ruger and Company, Inc., Thompson/Center Arms, U.S. Repeating Arms, Wesson Firearms Co., Kiesler Police Supply, Light Weapons Systems, Inc., Caspian Arms, Ltd., Sigarms, Inc., Smith & Wesson Corp., Springfield, Inc., Sundance Industries, Cobray Firearms, Acusport Corp., AJ Wholesale Gun Distributors, Inc., Alamo Leather Goods, Inc., Amchar Wholesale, Inc., Ashland Shooting Supply, Banger L.P., Brazas Sporting Arms, Inc., Bumble Bee Wholesale, Chattanooga Shooting Supplies, Inc., Conevera Guns, Inc., Davidson's, Eagle Exim, Inc., Ellett Brothers, Fox Wholesale, Inc., Go/Sportsmen's Supply, Inc., Graf & Sons, Gunarama Wholesale, Hill Country Wholesale, Inc., Jack First, Inc., J & S Wholesale, Lew Horton Distributing Co., Lipsey's, Inc., Maurice Sporting Goods, Inc., Micro Sight Co., Nationwide Sports Distributors, P & B Enterprises, Point Sporting Goods, Riley's, Inc., RSR Wholesale South, Inc., Schaub Distributors, Scott Wholesale Co., Inc., SG Distributing/Andrew's Sporting Goods, Southern Ohio Gun Distributors, Inc., Sports South, Inc., American Shooting Sports Council, Inc., National Shooting Sports Foundation, Inc., Sporting Arms and Ammunition Manufacturer's Institute, Calico, Inc., Mitchell Arms, Inc., Olympic/Safari Arms, Fabbrica D'armi Pietro S.P.A., also known as Beretta Firearms, Light Weapons Systems, Inc., and S.W. Daniels, Incorporated, Defendants.

Docket Nos. 99–7753, 99–7785 and 99–7787.

United States Court of Appeals, Second Circuit.

Argued March 13, 2000
Decided Aug. 16, 2000

Lawrence S. Greenwald, Baltimore, Maryland (Nancy E. Paige, Catherine A. Bledsoe, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, Maryland; Lawrence G. Keane, Pino & Associates, White Plains, New York; Daniel T. Hughes, Erin A. O'Leary, Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, New York, New York, of counsel), for Defendants–Appellants Beretta U.S.A. Corp. and American Arms, Inc.

Timothy A. Bumann, Budd Larner Gross Rosenbaum Greenberg & Sade, Atlanta, Georgia (Geoffrey Gaulkin, Dana S. Mancuso, Budd Larner Gross Rosenbaum Greenberg & Sade, Short Hills, New Jersey; Barry R. Ostrager, Mary Beth Forshaw, Gerald E. Hawxhurst, Simpson Thacher & Bartlett, New York, New York; Andrew Zajac, Fiedelman & McGaw, Jericho, New York, of counsel), for Defendants–Appellants Taurus International Manufacturing, Inc. and Colt's Manufacturing Co., Inc.

Barry R. Ostrager, New York, New York (Mary Beth Forshaw, Gerald E. Hawxhurst, Simpson Thacher & Bartlett, New York, New York; Andrew Zajac, Fiedelman & McGaw, Jericho, New York, of counsel), for Defendant–Appellant Colt's Manufacturing Co., Inc.

Marc E. Elovitz, New York, New York (Michael S. Feldberg, Kefira R. Wilderman (admission pending), Schulte Roth & Zabel LLP, New York, New York; Elisa Barnes, New York, New York; Denise Dunleavy, Weitz & Luxenberg, New York, New York, of counsel), for Plaintiffs–Appellees Gail Fox and Stephen Fox.

Elisa Barnes, New York, New York, for Plaintiffs–Appellees Gail Fox and Stephen Fox.

John B. Glendon, Pepper Hamilton LLP, New York, New York (James M. Beck, Pepper Hamilton LLP, Philadelphia, Pennsylvania; Hugh F. Young, Jr., Product Liability Advisory Council, Inc., Reston, Virginia, of counsel), filed a brief for Product Liability Advisory Council, Inc. as Amicus Curiae in support of Defendants–Appellants.

Peter J. Romatowski, Washington, D.C. (Victor E. Schwartz, Mark A. Behrens, Christopher J. McGuire, Crowell & Moring LLP, Washington, D.C.; Robin S. Conrad, National Chamber Litigation Center, Inc., Washington, D.C., of counsel), filed a brief for Chamber of Commerce of the United States as Amicus Curiae in support of Defendants–Appellants.

Pierce Gore, New York, New York (Steven E. Fineman, Robert J. Nelson, Jonathan D. Selbin, Lieff, Cabraser, Heimann & Bernstein, LLP, New York, New York, of counsel), filed a brief for The Cities of Boston, Massachusetts, Camden, New Jersey, Chicago, Illinois, Los Angeles, The City and County of San Francisco, Sacramento, Oakland, Berkeley, East Palo Alto, Compton, Inglewood and West Hollywood and the Counties of Los Angeles, Alameda and San Mateo, California as Amici Curiae in support of Plaintiffs–Appellees.

Jeffrey R. White, Washington, D.C. (Richard H. Middleton, The Association of Trial Lawyers of America, Washington, D.C.; Misty Farris, Thomas Simms, Baron & Budd, P.C., Dallas, Texas, of counsel), filed a brief for The Association of Trial Lawyers of America as Amicus Curiae in support of Plaintiffs–Appellees.

Rachana Bhowmik, Washington, D.C. (Dennis A. Henigan, Jonathan E. Lowy, Brian J. Siebel, Allen Rostron, Center to Prevent Handgun Violence, Washington, D.C., of counsel), filed a brief for The Center to Prevent Handgun Violence, The American Academy of Pediatrics, The American Association of Suicidology, The American Jewish Congress Commission on Law and Social Action, Common Cause, The Educational Fund to End Handgun Violence, The National Association of Elementary School Principals, The National Association of School Psychologists, The National Association of Secondary School Principals, The National Spinal Cord Injury Association, and Trial Lawyers for Public Justice as Amici Curiae in support of Plaintiffs–Appellees.

Before: CARDAMONE, CABRANES, Circuit Judges, and TRAGER*, District Judge.

Judge JOSÉ A. CABRANES dissents in a separate opinion.

* Hon. David G. Trager, United States District Court Judge for the Eastern District of New York, sitting by designation.

CARDAMONE, Circuit Judge:

Appellees Gail Fox and her son Stephen Fox among other plaintiffs sued defendants, 25 gun manufacturers, in the United States District Court for the Eastern District of New York (Weinstein, J.). A four-week jury trial resulted in a jury verdict finding 15 of the defendants negligent in the marketing and distribution of handguns. Although nine of these 15 defendants were found by the jury to have proximately caused injury to one or more of the plaintiffs, damages were assessed against only three of them.

Defendants moved for judgment as a matter of law before the district court under Fed.R.Civ.P. 50(b) arguing that under New York law they owed no duty of reasonable care to plaintiffs in marketing and distributing their product, and that absent such duty they could not be found guilty of negligence. The district court denied the motion.

On appeal, the issues of duty and of causation are before us and we think they present questions that must be certified to New York's highest court. Accordingly, we certify the following questions to the New York Court of Appeals:

> Whether the defendants owed plaintiffs a duty to exercise reasonable care in the marketing and distribution of the handguns they manufacture?

> Whether liability in this case may be apportioned on a market share basis, and if so, how?

The manner in which we have framed these questions is in no way meant to restrict the Court of Appeals from considering any state law issues it might wish to resolve in connection with this appeal. We retain jurisdiction over the appeal so that after the New York Court of Appeals responds, we may proceed to decide it in light of that response.

## BACKGROUND

### A. Legal Proceedings Prior to Trial

This case began in January 1995 when two plaintiffs—relatives of people killed by handguns—sued 49 handgun manufacturers alleging negligent marketing, design defect, ultrahazardous activity and fraud. A number of defendants jointly moved for summary judgment. Judge Weinstein dismissed plaintiffs' product liability and fraud claims, but allowed plaintiffs to proceed on a negligent marketing theory. *See Hamilton v. Accu–Tek,* 935 F.Supp. 1307, 1315 (E.D.N.Y.1996). In April 1996 the district court granted leave to amend the complaint in order to add plaintiffs seeking to intervene, and in May 1996 the defendants again moved for summary judgment. This motion was denied on the ground that discovery on defendants' underlying negligence was not yet complete. *See id.* at 1329–30. We denied defendants' petition for a writ of mandamus, *see Hamilton v. Accu–Tek,* No. 96–9217 (2d Cir. Aug. 5, 1996).

Actions against a number of handgun *distributors* were commenced in June 1996. All but two of these defendants moved to dismiss for lack of personal jurisdiction, *see* Fed. R. Civ. P. 12(b)(2), and that motion was denied as to 15 distributors, *see Hamilton v. Accu–Tek,* 32 F.Supp.2d 47, 82 (E.D.N.Y.1998). Defendants unsuccessfully moved to dismiss or transfer one case on the ground of lack of diversity, *see Hamilton v. Accu–Tek,* 13 F.Supp.2d 366, 371 (E.D.N.Y.1998), and then renewed their motion for summary judgment at the end of discovery, which was again denied. *See Hamilton v. Accu–Tek,* No. 95CIV0049, 1998 WL 903473, at *1 (E.D.N.Y. Dec. 18, 1998). Two of the plaintiffs' cases were transferred to federal courts in California and Virginia based on conflict of laws and other considerations. *See Hamilton v. Accu–Tek,* 47 F.Supp.2d 330, 348 (E.D.N.Y.1999).

Those parties that remained in the Eastern District finally proceeded to trial in January 1999. Plaintiffs, at the suggestion of the court, voluntarily withdrew all claims against the handgun distributors, and continued their suit only against the manufacturers. All other related gun cases pending in the Eastern District of New York have been stayed until the appeal in this case has been decided. *See Hamilton v. Accu–Tek,* 62 F.Supp.2d 802, 810 (E.D.N.Y.1999).

### B. Trial Proceedings

Seven plaintiffs went to trial against 25 defendant manufacturers. Plaintiffs asserted that defendants distributed their products negligently so as to create and bolster an illegal, underground market in handguns, one that furnished weapons to minors and to criminals involved in the shootings that precipitated this suit. Plaintiffs offered evidence tending to show that defendants' actions contributed to the development and expansion of a huge illegal market for guns, and that this illegal market enabled their criminal misuse.

Plaintiffs further contended that defendants' duty to exercise reasonable care in the marketing and distribution of handguns arose from four factors: (1) their ability to control the marketing and distribution of their guns; (2) their knowledge that large numbers of the guns they manufacture enter the illegal market and are used to commit crimes; (3) New York's policy of strict regulation of firearms; and (4) the uniquely lethal nature of defendants' products.

Because only one of the guns was recovered, the plaintiffs proceeded on a market share theory of liability against all the manufacturers, asserting they were severally liable for failing to implement marketing and distribution safety procedures, and that such failure resulted in sending a high volume of guns into the underground market.

After a four-week trial, the jury returned a special verdict finding that 15 of the 25 defendants had failed to use reasonable care in the distribution of their guns.

*See id.* at 811. Ten of the manufacturers were found not liable. Nine of the 15 defendants were found to have proximately caused the deaths of the decedents of two plaintiffs, but no damages were awarded against them. The jury awarded damages against three defendants—American Arms, Beretta, and Taurus—upon finding they proximately caused the injuries suffered by appellees Stephen Fox (permanently disabled after surviving a shooting) and his mother, Gail Fox.

The jury calculated $3.95 million in damages for Stephen Fox's injuries and $50,000 for his mother. The jury apportioned liability to each of the three defendants according to their share of the national handgun market: for American Arms, 0.23 percent (or $9,200); for Beretta, 6.03 percent (or $241,200); and for Taurus 6.80 percent (or $272,000). *See id.* Colt's was found negligent, but was not found to have proximately caused the Foxs' injuries, and no damages were therefore assigned it.

After this verdict, the defendants unsuccessfully moved for judgment as a matter of law pursuant to Rule 50(b), and also moved to dismiss on the ground of collateral estoppel. None of the defendants appeal the district court's denial of their motion to dismiss on collateral estoppel grounds; they argue only that they are entitled to judgment as a matter of law pursuant to Rule 50(b) because under New York law they owed no duty to plaintiffs. Although the claims against it were dismissed, Colt's seeks standing to appeal due to the possibility of future liability. In a summary order filed concurrently with this opinion, we deny that motion.

## DISCUSSION

■ On appeal defendants contend the district court erred in denying their Rule 50(b) motion because absent any duty owed plaintiffs, they cannot be held liable as a matter of law for the failure to use reasonable care in the marketing and distribution of handguns. Defendants aver that the evidence at trial is insufficient to support the jury's verdict that they breached any duty or proximately caused plaintiffs' injuries. They first argue that they owe plaintiffs no duty under New York law; second, they maintain that even if they do owe plaintiffs such duty, apportioning liability on a market share basis is impermissible under New York law. The existence of a duty owed by a putative tortfeasor and its scope is normally a matter of policy declared by judicial officers. *See Palka v. Servicemaster Management Servs. Corp.,* 83 N.Y.2d 579, 585, 611 N.Y.S.2d 817, 634 N.E.2d 189 (1994).

■ Moreover, as noted, the applicability of a market share theory of liability also presents a potentially dispositive issue of state law in this case. Thus, the two questions that must be certified to the New York Court of Appeals are whether there is a duty owing by these defendant gun manufacturers to plaintiffs who are gun victims, and if there is such duty, whether liability may be apportioned on the basis of the negligent manufacturers' market share. We reserve decision on whether the jury had sufficient evidence to support its findings that defendants breached their duty, if any, and in so doing proximately caused plaintiffs' injuries.

## I Certification

■ The Attorney General of New York State has submitted to us a letter requesting that we certify the question of duty to the New York Court of Appeals. Certification, a discretionary device for the questioning and the answering court, *see* 2d Cir. R. 0.27; N.Y. Ct.App. R. 500.17, is appropriate where with respect to the question asked there is a split of authority; or, if there is a statute implicated, its plain language does not answer the question; or when what is presented is a complex question of New York common law for which no state authority may be found. *See Riordan v. Nationwide Mut. Fire Ins. Co.,* 977 F.2d 47, 51 (2d Cir.1992).

The New York Court of Appeals instructs us generally that the existence and scope of a duty of care is a subject expounded by judicial declaration. Duty cannot be "derived or discerned from an algebraic formula" but "coalesces from vectored forces," which include logic, science and "weighty competing socioeconomic policies." *Palka*, 83 N.Y.2d at 585, 611 N.Y.S.2d 817, 634 N.E.2d 189. New York's highest court expressly reserved a delicate balancing test for itself and for courts generally to apply, explaining that "[t]he common law of torts is, at its foundation, a means of apportioning risks and allocating the burden of loss," and that in addition to the moral and logical components of its analysis, a court must set the compass of a duty so that the social consequences of wrongs and exposure to liability are limited to a controllable degree. *Waters v. New York City Hous. Auth.*, 69 N.Y.2d 225, 229, 513 N.Y.S.2d 356, 505 N.E.2d 922 (1987); *see McCarthy v. Olin Corp.*, 119 F.3d 148, 157 (2d Cir.1997).

Whether defendants owe a duty to the plaintiffs' victims is therefore a particularly thorny inquiry, implicating questions of policy that cannot adequately be resolved by reviewing New York state precedents. Given the centrality of competing policies to the duty question this case raises, and the magnitude of the answer's impact on New York citizens, it should be confronted in the first instance by the New York Court of Appeals. Any other approach, we believe, would interfere with and invade the authority and independence of the state's judicial department. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Obviously, even that New York court does not determine the existence of a duty anew in every negligence case it hears. Hence, once it establishes that a duty exists in a given relationship between plaintiffs and defendants, such judicial rule is sufficient to establish a duty of due care in like cases. In certifying this case, we cannot know whether the New York Court of Appeals will recognize the existence of a duty, either from one of its own precedents or by choosing to create one here, or will decline to accept certification.

Defendants declare that certification is unnecessary and unwarranted because precedents *bar* the New York Court of Appeals (and this Court) from recognizing a duty in circumstances like those presented by the instant case. We answer defendants' arguments, not because we are prepared to say that the New York Court of Appeals *will* recognize a duty, but because precedents leave sufficiently open the question of whether or not a duty exists in this case.

If the New York Court of Appeals chooses to recognize a duty owed plaintiffs in this case, the question of whether defendant manufacturers may be held liable for plaintiffs' injuries on a market share basis may ultimately "control the outcome of this case." 2d Cir. R. § 0.27; *see also* N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17(a) (allowing certification of "determinative questions of New York law" to the New York Court of Appeals). Although the Court of Appeals may choose not to reach it, certifying this question at this time serves to aid the efficient administration of justice for both state and federal courts. *See Riordan*, 977 F.2d at 57.

## II  New York State Law

### A.  *Is There Controlling Precedent on Duty?*

Appellants mount two arguments against certification. First, they insist that *McCarthy* and *Forni v. Ferguson*, No. 132994/94 (N.Y.Sup.Ct. Aug. 2, 1995), *aff'd*, 232 A.D.2d 176, 648 N.Y.S.2d 73 (1st Dep't 1996), both of which involved tort actions brought against handgun and ammunition manufacturers, constitute controlling precedent, and therefore foreclose the possibility that they might owe plaintiffs a duty in this case.

In both *McCarthy* and *Forni*, victims of the 1993 shooting aboard the Long Island

Rail Road commuter train brought suit against the manufacturer of the "Black Talon" bullets used by shooter Colin Ferguson. Among other theories of liability plaintiffs alleged that the manufacturer's sale to the general public of these injury-enhancing hollowpoint bullets was negligent, and that its failure to restrict sales of Black Talon ammunition to law enforcement agencies proximately caused the plaintiffs' injuries. Our Court rejected this argument, reasoning that under New York law, the manufacturer had no duty to limit sales of Black Talon bullets to law enforcement agencies, when sales to civilians were entirely legal in New York. For there to be such a duty, we continued, the manufacturer would have had to anticipate that its advertising would attract " 'many types of sadistic, unstable and criminal personalities.' " *McCarthy*, 119 F.3d at 156.

Although there is broad language in *McCarthy* to the effect that "New York courts do not impose a legal duty on manufacturers to control the distribution of potentially dangerous products," *id.* at 157, in that case we considered a substantially different claim than is now before us. The duty to take reasonable steps to block the illegal distribution of guns—at issue in this case—differs significantly from the duty the *McCarthy* plaintiffs declared they were owed. Plaintiffs maintain in this case that the gun manufacturers thrive on the *illegal* gun market, and simply ignore statistical information that indicates which distributors funnel guns into that illegal market. To impose on defendants the duty plaintiffs urge in this case, the gun manufacturers need not look into a crystal ball to foresee what might happen to their guns after they leave the factory and enter into the channels of distribution, or what personality types their guns might attract. They need only exercise a level of control and monitoring over distributors, plaintiffs point out, similar to the level they currently maintain with regard to pricing and advertising.

While it was indisputable that the Olin Corporation was unable to predict Colin Ferguson's actions, plaintiffs in this case offered evidence at trial that gun manufacturers *are* able to control which distributors they supply with guns. Rather than predict whether certain *legal* sales might produce deleterious consequences, the duty plaintiffs urge in this case relates to a gun market that the New York state legislature has already determined to be dangerous and undesirable, by passing strict gun laws that make its existence *illegal*. In addition, the scope of the duty plaintiffs claim they were owed in the case at hand is much narrower than that advanced by the *McCarthy* plaintiffs. Here, the gun manufacturers are being held to a duty to take reasonable steps, or to *try* to abate the illegal gun market, not a duty to predict and prevent every single illegal gun transaction. Thus, neither *McCarthy* nor *Forni* provide us with a clear answer to the question of duty in this case.

### B. *Is Duty Abrogated by Intervening Act?*

Second, appellants aver that the recognition of a duty in this case would violate the rule in New York that a defendant has no duty to protect a plaintiff from tortious or criminal conduct by a third person in the absence of either: (1) a special relationship between defendant and plaintiff; or (2) a special relationship between defendant and a third person that gives defendant sufficient authority and ability to control the third person's conduct. Through this reasoning defendants distinguish the many cases where New York courts *have* held defendants liable for the injuries resulting from intervening acts of third parties. *See Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 519, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980) (landlord has duty to take reasonable precautionary measures to minimize risk of foreseeable criminal activity); *Stevens v. Kirby*, 86 A.D.2d 391, 394, 450 N.Y.S.2d 607 (4th Dep't 1982) (tavern owner owes duty to patrons to protect them

from personal attack when having reasonable cause to anticipate conduct by third persons likely to endanger their safety); *see also Modave v. Long Island Jewish Med. Ctr.*, 501 F.2d 1065, 1072–73 (2d Cir. 1974) (negligent doctor could be held liable where sufficient causal connection exists for harm caused by another negligent doctor at another hospital).

Relationships between a landlord and her tenant, between a carrier and its passenger, between an employer and his employee, or even between a parent and her child, are not *a fortiori* "special." Rather, they reflect the complex balancing tests that courts perform in assigning duties of care. *See* W. Page Keeton, *Prosser and Keeton on Torts*, § 53 at 358 (5th ed.1984) (" 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection."). Rather than mechanically looking for categorical relationships, "[c]ourts traditionally and as part of the common-law process fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." *Palka*, 83 N.Y.2d at 586, 611 N.Y.S.2d 817, 634 N.E.2d 189.

It is through such complex analysis of competing policies that the New York Court of Appeals has, on occasion, swept away artificial doctrinal barriers in order to address evolving societal needs. *See MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 391, ·111 N.E. 1050 (1916) (Cardozo, J.) (legal duties "are whatever the needs of life in a developing civilization require them to be"); *see also Codling v. Paglia*, 32 N.Y.2d 330, 339–43, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973) (analyzing the economics of production and distribution in determining the just responsibilities of modern-day manufacturers). At the same time, New York courts have refused to recognize a duty when defendants had no opportunity to prevent the harm that ensued, *see Pulka v. Edelman*, 40 N.Y.2d 781, 784, 390 N.Y.S.2d 393, 358 N.E.2d 1019 (1976), or where imposing a duty would subject a defendant to limitless liability, extending "beyond sound public policy," *Einhorn v. Seeley*, 136 A.D.2d 122, 127, 525 N.Y.S.2d 212 (1st Dep't 1988); *accord Waters*, 69 N.Y.2d at 230, 513 N.Y.S.2d 356, 505 N.E.2d 922.

Defendants further insist that such policy questions must be reserved for the legislature, and cannot be answered by the courts. Following an ingenuous chain of reasoning, they urge that the unique dangerousness of handguns—which are designed to injure and kill—insulates their manufacturers from any liability for the harm associated with their use, absent a determination by the legislature that they are illegal. The policy-laden question of duty we certify to the New York Court of Appeals does not relate to the legality of handguns, or whether manufacturers have a duty to restrict their sales to a subset of those adjudged *lawful* by the legislature. *See McCarthy*, 119 F.3d at 157; *Forni*, 232 A.D.2d at 176, 648 N.Y.S.2d 73.

Rather, the certified question concerns whether manufacturers must exercise *reasonable care* in the marketing and distribution of those products. This is precisely the type of question that the New York's highest court has repeatedly reserved for itself. *See Palka*, 83 N.Y.2d at 585–89, 611 N.Y.S.2d 817, 634 N.E.2d 189; *Waters*, 69 N.Y.2d at 229–30, 513 N.Y.S.2d 356, 505 N.E.2d 922.

Not surprisingly, courts have routinely recognized the duties of reasonable care that accompany the distribution of other dangerous, but perfectly legal, products. *See Hunnings v. Texaco*, 29 F.3d 1480, 1484–86 (11th Cir.1994) (holding manufacturer of mineral spirits, an " 'inherently dangerous commodity' " to heightened responsibility to prevent misuse of their product); *Suchomajcz v. Hummel Chem.*

*Co.,* 524 F.2d 19, 24 (3d Cir.1975) (manufacturer could be held liable for negligently selling chemical to fireworks kit maker); *Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579, 588 (Colo.1984) (en banc) (holding propane wholesalers, manufacturers, and suppliers to highest degree of care in distributing their high-risk product); *Flint Explosive Co. v. Edwards,* 84 Ga.App. 376, 66 S.E.2d 368, 380 (1951) (noting that with regard to manufacturers' liability, "a greater measure of care is necessary in dealing with explosives than in dealing with products not ordinarily capable of inflicting injury"); *Moning v. Alfono,* 400 Mich. 425, 254 N.W.2d 759, 765 (1977) (manufacturers, wholesalers, and retailers owe legal obligation of due care in manufacture and marketing of sling shots).

It appears to us from the above that New York's highest court will find that a duty exists when reasonable minds agree that it should. What does not appear clear to us is whether that court would rule that it should exist in this case.

### C. Does New York Permit Apportionment of Liability Based on Market Share?

█ New York recognizes four theories of collective liability: alternative, enterprise, concerted action, and market share. *See Hamilton,* 62 F.Supp.2d 802, 839 (E.D.N.Y.1999) (collecting cases). Under these theories, a group of defendants, rather than a single causative defendant, shoulders the liability for plaintiffs' injuries. In this case, the jury found that the negligence of three defendants proximately caused plaintiffs' injuries. Yet, the victims were unable to identify the particular manufacturers of the guns that were used to shoot them. Expert testimony demonstrated that the manufacturers could not be identified based on the bullets and casings that were recovered. To identify the manufacturers, the guns themselves had to be found. And they were not.

Faced with this problem, the trial judge apportioned liability on a market share

basis. His reasoning was predicated on the similarities between the nature of liability in the case at hand and in toxic tort cases. Under plaintiffs' theory of liability it was not the guns that caused their injuries, but rather the underground market created and fueled by defendants' negligent practices. Defendants urge that the jury's finding of causation cannot be supported by the evidence because New York law forbids application of market share liability to negligent manufacturers. According to the trial court's view, the availability of the guns—not the particular type of gun—was the relevant factor for the perpetrators and victims of the shootings. The district court also ruled that the policy underpinning market share liability in other contexts weighed in favor of market share liability here. We find no such clear answer under New York law.

█ The theory of market share liability emerged in context of diethylstilbestrol (DES) litigation, where plaintiffs encountered unique problems of proof. The generic chemical composition of the drug, the large number of producers, and the long latency period between exposure and disease created an onerous burden for plaintiffs to prove which defendants had manufactured the particular pills ingested by their mothers. As a result, the New York Court of Appeals in *Hymowitz v. Eli Lilly & Co.,* 73 N.Y.2d 487, 541 N.Y.S.2d 941, 539 N.E.2d 1069 (1989), crafted a remedy for injured plaintiffs because the traditional cause-in-fact requirement of tort law did not provide one. By dispensing with identification, the market share theory predicates liability on defendants' creation of risk. An individual defendant's share of the liability is based therefore on the *probability* that its product actually caused the harm, or in other words, its market share of that product measures its liability.

Concededly, *Hymowitz* emphasized that DES litigation was "singular" but it did not limit the possible further application of market share liability. The rationale behind market share liability set out in *Hy-*

*mowitz* was fully consistent with that Court's consideration of public policy in addressing newly emerging problems of tort law. *See, e.g., Bichler v. Eli Lilly & Co.*, 55 N.Y.2d 571, 579–80, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982) ("Products liability law cannot be expected to stand still where innocent victims face inordinately difficult problems of proof"); *Codling*, 32 N.Y.2d at 339, 345 N.Y.S.2d 461, 298 N.E.2d 622 ("The dynamic growth of the law in this area has been a testimonial to the adaptability of our judicial system and its resilient capacity to respond to new developments.").

Since *Hymowitz*, other courts have applied market share liability in non-DES cases. *See, e.g., Ray v. Cutter Labs.*, 754 F.Supp. 193 (M.D.Fla.1991) (blood products); *Morris v. Parke, Davis & Co.*, 667 F.Supp. 1332 (C.D.Cal.1987) (vaccines); *Richie v. Bridgestone, Inc.*, 22 Cal.App.4th 335, 27 Cal.Rptr.2d 418 (1st Dist.1994) (asbestos lines brake pads); *Jackson v. Glidden Co.*, 98 Ohio App.3d 100, 647 N.E.2d 879 (8th Dist.1994) (lead paint). As a consequence, considering New York's public policy and the unique issues this case presents, it is unclear whether New York's highest court would choose to apportion liability on a market share basis among those handgun manufacturers found negligent.

Related to this question of whether market share liability applies is a subsidiary question of *how* it should apply. Determining the relevant market for apportionment is also a policy-laden inquiry. The district court apportioned liability by calculating the three defendants' (whose negligence was found to have proximately caused plaintiffs' injuries) liability according to their share of the national market for handguns. It did not apportion the three defendants' liability applying their market share in the group of manufacturers found negligent, or even those whose negligence proximately caused plaintiffs' injuries. If the Court of Appeals addresses the questions we certify, it may also

wish to consider what market best effectuates the policies behind the imposition of market-share liability.

Consequently, and for the reasons set out above, we certify to the New York Court of Appeals the attached questions.

### Certificate

Certificate to the New York Court of Appeals pursuant to N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17(b) (1999) and § 0.27 of the Local Rules of the United States Court of Appeals for the Second Circuit.

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate, together with a complete set of briefs, appendices, and record filed by the parties with this Court, stating the following questions:

I. Whether the defendants owed plaintiffs a duty to exercise reasonable care in the marketing and distribution of the handguns they manufacture?

II. Whether liability may be apportioned on a market share basis, and if so, how?

The parties are hereby ordered to bear equally such fees and costs, if any, as may be requested by the New York Court of Appeals.

JOSÉ A. CABRANES, Circuit Judge, dissenting:

I respectfully dissent. I do not think we should certify this case to the New York Court of Appeals, and I believe that our doing so constitutes an unwarranted shifting of the burden to decide this case to New York's highest court. I also believe that the New York Court of Appeals would be well justified in declining to accept this certification.

It is well established that the costs to the litigants and the burdens of judicial review imposed on a state's highest court counsel strongly against liberal recourse

to certification. *See, e.g., Dorman v. Satti*, 862 F.2d 432, 435 (2d Cir.1988) ("[I]ssues of state law are not to be routinely certified ... simply because a certification procedure is available. The procedure must not be a device for shifting the burdens of this Court to those whose burdens are at least as great." (internal quotation marks omitted)). We have therefore explained that certification is improper "where the question does not present a complex issue, there is no split of authority, and sufficient precedents exist for us to make [a] determination [of how the state's highest court would decide the issue presented]." *Tinelli v. Redl*, 199 F.3d 603, 605 n. 5 (2d Cir.1999) (internal quotation marks omitted). Here, although the New York Court of Appeals has not been confronted with the precise issues before us, there are sufficient precedents—from New York courts, from this Court, and from other jurisdictions—for us to make a determination of how New York's highest court would rule. *See, e.g., Frank Felix Assocs. v. Austin Drugs, Inc.*, 111 F.3d 284, 287 (2d Cir.1997) (noting that, in endeavoring to predict how a state court would decide an issue, "we must consider all the resources the highest court could use, including decisions reached in other jurisdictions" (internal quotation marks and citations omitted)). For this reason, and because all parties to this appeal oppose certification—a factor ignored by the majority, but which "should be given substantial ... weight in the analysis," *Goodlett v. Kalishek*, 223 F.3d 32, 38 n. 4, (2d Cir.2000)—I think certification, with its attendant expenses and delay, is inappropriate. Accordingly, I dissent.