OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Peter Zeiler drowned while swimming at Copacabana Beach, a public facility in Rio De Janeiro, Brazil. He and Regina Darby
 
 *346
 
 were guests at the Meridien Copacabana Hotel, which is separated from the beach by a four-lane public highway. The hotel marketed its proximity to the beach and encouraged guests to use it, even providing them with chairs, umbrellas, towels and a security escort service. It also furnished guests with pamphlets warning about sun exposure and crime on the beach. The pamphlets did not, however, say anything about possibly dangerous surf conditions.
 

 The Brazilian government owned and maintained the beach and employed the lifeguards and rescue personnel. The government did not convey surf information to area hotels. When local weather conditions created rip tides,
 
 [1]
 
 lifeguards were not permitted to enter the water but would post red flags and, when necessary, call for helicopters to rescue swimmers.
 

 On the day in question, Zeiler went swimming at the beach. When he failed to return, Darby summoned help and eventually learned that he had drowned. Individually and on behalf of Zeiler’s estate, Darby sued Societe des Hotels Meridien in United States District Court for the Southern District of New York, alleging that Zeiler drowned in a rip tide and that the hotel was negligent in failing to warn him of the dangerous surf conditions, of which the hotel knew or should have known, owing to reports of rip tide rescues and drownings.
 
 [2]
 
 Applying New York law, the District Court granted defendant summary judgment. The court concluded that defendant was not answerable for the acts of its subsidiary (the hotel),
 
 [3]
 
 and even if it were, defendant would still not be liable, inasmuch as a landowner’s duty extends only to the areas of land it “operates, maintains and controls, and not to the lands of another” (here, the Brazilian government). The District Court held that the “hotel had no duty to warn its guests about the conditions of the sea of the Copacabana beach” (1999 WL 459816, 1999 US Dist LEXIS 9744).
 

 
 *347
 
 Darby appealed, and the Second Circuit certified the following questions to us (2001 WL 699535):
 

 “(1) Whether, under New York law and all of the circumstances shown by the record developed in this case, a jury question of negligence is presented when there is evidence that an innkeeper whose hotel was across the road from a public beach, use of which by hotel guests was encouraged and facilitated by the hotel, failed to warn of rip tides that caused injury to a guest swimming off that beach.
 

 “(2) Whether an innkeeper who so encourages and facilitates use of a nearby public beach has
 
 ‘a
 
 duty to take reasonable care to discover the actual condition of the land under water in the area wherein his guests were invited and permitted to bathe, and * * * warn them of its dangerous condition’ ” (quoting
 
 Butts v
 
 Kouwenhoven, 272 App Div 1019, 1019-1020).
 

 We accepted certification (95 NY2d 911) and now answer both questions in the negative.
 

 A finding of negligence may be based only upon the breach of a duty. If, in connection with the acts complained of, the defendant owes no duty to the plaintiff, the action must fail. Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists (see,
 
 Hamilton v Beretta U.S.A. Corp.,
 
 96 NY2d 222;
 
 Waters v New York City Hous. Auth.,
 
 69 NY2d 225, 229). In so doing, courts identify what people may reasonably expect of one another. In assessing the scope and consequences of civil responsibility, they define the boundaries of “duty” to comport with what is socially, culturally and economically acceptable (see,
 
 Pulka v Edelman,
 
 40 NY2d 781, 785-786;
 
 Tobin v Grossman,
 
 24 NY2d 609, 619).
 

 The duties of innkeepers have developed over centuries. By Chaucer’s time, English law recognized the responsibilities of innkeepers to their customers (see, Bogen,
 
 The Innkeeper’s Tale: The Legal Development of a Public Calling,
 
 1996 Utah L Rev 51). At common law, the innkeeper was required, among other things, to provide food, lodging and a safe harbor for its guests (see, Sherry,
 
 Laws of Innkeepers,
 
 at 3-9, 197 [3d ed 1993]). These principles were carried across the Atlantic and, by and large, helped shape our formulations of innkeepers’ duties.
 

 
 *348
 
 In New York, negligence causes of action have been sustained against innkeepers in a variety of contexts (see,
 
 e.g., Morell v Peekskill Ranch,
 
 64 NY2d 859, 860 [failure to warn of dangerous condition on resort walking path];
 
 DiSalvo v Armae, Inc.,
 
 41 NY2d 80, 82-83 [failure to protect children at play on resort grounds from, traffic on private resort road];
 
 Orlick v Granit Hotel & Country Club,
 
 30 NY2d 246, 249-250 [failure to properly construct and light stairways in hotel];
 
 Buchaca v Colgate Inn,
 
 296 NY 790, 791 [failure to keep inn sidewalk free of ice];
 
 Allon v Park Cent. Hotel Co.,
 
 272 NY 631, 632 [failure to supervise hotel swimming pool];
 
 Clark v New York Hotel Statler Co.,
 
 253 NY 583, 584 [failure to maintain hotel’s revolving door entrance];
 
 Maloney v Hearst Hotels Corp.,
 
 274 NY 106, 109 [failure to safeguard against fire inside hotel]).
 

 Plaintiff asks us to impose on innkeepers a duty to warn of dangerous surf conditions at off-premises beaches they do not own or control. We note some support for the proposition that an innkeeper may be held liable for failure to warn guests about surf conditions at a nearby public beach
 
 (see, Fuhrer v Gearhart-By-The-Sea, Inc.,
 
 306 Ore 434, 441, 760 P2d 874, 879-880). An appreciable weight of authority, however, is to the contrary. As the Restatement puts it, an innkeeper owes no “duty to a guest who is injured or endangered while * * * away from the premises”
 
 (see,
 
 Restatement [Second] of Torts § 314A, comment
 
 c; see also, Poleyeff v Seville Beach Hotel Corp.,
 
 782 So 2d 422, 424 [Fla App 3d Dist] [“(A)n entity which does not control the area or undertake a particular responsibility to do so has no common law duty to warn, correct, or safeguard others from naturally occurring, even if hidden, dangers common to the waters in which they are found” (internal citations omitted)];
 
 Adika v Beekman Towers,
 
 633 So 2d 1170, 1171 [Fla App 3d Dist] [same];
 
 Sperka v Little Sabine Bay,
 
 642 So 2d 654, 655-656 [Fla App 1st Dist] [holding that an innkeeper owed no duty to warn its guest of a hidden sandbar in an adjacent public beach];
 
 Princess Hotels Intl. v Superior Ct.,
 
 33 Cal App 4th 645, 646, 651-652, 39 Cal Rptr 2d 457, 461 [“(W)e hold that a hotel has no duty to warn its guests of a dangerous condition of adjacent property over which the hotel has no control, to wit, the ocean currents”]).
 

 Plaintiff relies primarily on
 
 Butts v Kouwenhoven
 
 (272 App Div 1019, 1019-1020). There, the Appellate Division held that an innkeeper “was under a duty to take reasonable care to discover the actual condition of the land under water in the area wherein [its] guests were invited and permitted to bathe,
 
 *349
 
 and either to make the área safe or warn them of its dangerous condition.” The record in
 
 Butts,
 
 however, reveals that the inn was located directly on 100 feet of waterfront. The inn maintained a retaining wall along the shoreline with a stairway leading into the water to provide access for its customers.
 

 In contrast to
 
 Butts,
 
 the case at hand involves an off-premises beach over which the hotel exercised no management, supervision or oversight. Here, the Brazilian government — and not the hotel — owned, maintained and controlled the beach. Area hotels played no part in providing warnings regarding surf conditions. Inasmuch as the Copacabana Beach was incontestably off premises, and not controlled by the hotel, plaintiffs reliance on
 
 Butts
 
 is misplaced.
 
 [4]
 

 In support of her claim for a duty to warn of surf conditions, Darby emphasizes that the hotel encouraged and facilitated use of the beach by providing beach towels, umbrellas and security escorts across the highway. Providing these services, however, does not make the hotel the insurer of its guests’ safety at a locale over which it has no control. Moreover, that the hotel chose to warn its guests of the risks of sün exposure and crime does not create any duty to warn against hazards of the sea. While it may well have been good practice, it would be inapt to require such a warning merely because the hotel facilitated beach use and provided other warnings.
 

 Rip tides are natural occurrences of a transitory character. Here, the record establishes that the Brazilian government, in operating and managing the beach, customarily monitored surf conditions and issued warnings when appropriate. Plaintiff would have us, in effect, charge innkeepers with the obligation to oversee whether the entity maintaining the beach — here the Brazilian government — was performing its function properly. This Court has never gone so far as to hold that a hotel owner or innkeeper has a duty to warn guests as to the danger of using an off-premises beach under these circumstances. We decline to impose one. A duty of this kind would create the prospect of unlimited responsibility to warn of all manner of risks and hazards over which innkeepers have no control. It is the very sort of liability we rejected in
 
 Pulka
 
 when we held
 
 *350
 
 that the “liability potential would be all but limitless and the outside boundaries of that liability, both in respect to space and the extent of care to be exercised, particularly in the absence of control, would be difficult of definition”
 
 (see, Pulka v Edelman,
 
 40 NY2d, at 786,
 
 supra).
 
 Accordingly, we conclude that no jury question of negligence is presented under the facts of this case.
 

 Having answered the first question in the negative, we further conclude that a hotel or innkeeper owes no duty to discover the actual condition of the land under water at the beach, even though it encourages and facilitates the use of the beach. To the extent that
 
 Butts v Kouwenhoven (supra)
 
 may be read as suggesting that either question should be answered otherwise, it should not be followed.
 

 Accordingly, both certified questions should be answered in the negative.
 

 Chief Judge Kaye and Judges Levine, Ciparick, Wesley and Graffeo concur; Judge Smith taking no part.
 

 Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in the negative.
 

 [1]
 

 . The term “rip tide,” synonymous with “rip current,” is defined as a “strong usually narrow surface current flowing outward from a shore that results from the return flow of waves and wind-driven water” (see, Webster’s Collegiate Dictionary, at 1010-1011 [10th ed 1998]).
 

 [2]
 

 . Defendant asserts that on the day Zeiler drowned, there were surfers, children and elderly people in the water. It argues that there is no evidence that Zeiler lost his life as a result of a rip tide, as opposed to exhaustion, a heart attack, or some other circumstance, such as an encounter with a sand bar. For purposes of this decision we will assume that Zeiler met his tragic death as a result of a rip tide.
 

 [3]
 

 . We have no occasion to address this point.
 

 [4]
 

 . The parties have argued extensively over whether the case before us is governed by
 
 Herman v State of New York
 
 (63 NY2d 822, 823). Insofar as
 
 Herman
 
 involved the duty of a beach
 
 owner
 
 it is distinguishable from this case and need not be addressed in answering the certified questions.