264 F.3d 21 (2nd Cir. 2001)
 FREDDIE HAMILTON, Administratrix of the Goods, Chattels, and Credits of Njuzi Ray, Deceased, and Individually, KATINA JOHNSTONE, Administratrix of the Goods, Chattels, and Credits of David Johnstone, Deceased, and Individually, DIANE BENJAMIN, as Administratrix of the Estate of Donald Boyd, Deceased, and Individually, DELORES BOYD, as Administratrix of the Estate of Donald Boyd, Deceased, and Individually, ANNE CARGILL, as Administratrix of the Estate of David Cargill, Deceased, and Individually, VERONICA COSTA, as Administratrix of the Estate of Christopher Malachi, Deceased, and Individually, FRANCES DAVIS, as Administratrix of the Estate of Frankie Davis, Deceased, and Individually, MARY KONAPACKI, as Independent Administrator of the Estate of Amy Elizabeth Merkes, Deceased, and Individually, SHUJI MATSUURA, as Personal Representative of the Estate of Go Matsuura, Deceased, and Individually, ALICE NORRIS, as Independent Administrator of the Estate of Rolanda Lakesia Marshall, Deceased, and Individually, YVONNE POPE as Administratrix of the Estate of Stepfone Herbin, Deceased, and Individually, MICHAEL ROBBINS, MARIA SANTANA, as Administratrix of the Estate of Robert Robles, Deceased, and Individually, ANDREA SLADE-LEWIS, as Administratrix of the Estate of Damon Slade, Deceased, and Individually, ADRIENNE STANFORD, as
Administrator to Collect of the Estate of Damien Anthony Stanford, Deceased, and Individually, KOICI SUNADA, as Representative of the Estate of Kei Sunada, Deceased, and Individually, VERONICA TROTT, as Administratrix of the Estate of Leroy Michael Sabb, Deceased, and Individually, THOMAS VANDENBERK, as Administrator to Collect the Estate of Thomas C. Vandenberk II, Deceased, and Individually, and DIANE ZARETSKY, as Administratrix of the Estate of Marvin Zaretsky, Deceased, and Individually, Plaintiffs,
GAIL FOX and STEPHEN FOX, Plaintiffs-Appellees,
v.
BERETTA U.S.A. CORP., TAURUS INTERNATIONAL MANUFACTURING, INC., AMERICAN ARMS, INC., and COLT'S MANUFACTURING CO., INC., Defendants-Appellants,
 ACCU-TEK, AMERICAN DERRINGER CORPORATION, A.M.T., ARMSCO DISTRIBUTING CO., doing business as Armsco Distributor, ARMS CORPORATION OF AMERICA, ARMS TECHNOLOGY, ASTRA-UNCERA Y CIA, S.A., BROWNING ARMS CO., BRYCO ARMS, CASPIAN ARMS, INC., CENTURY INTERNATIONAL ARMS, INC., CHARCO, INC., formerly known as Charter Arms Corp., DAVIS INDUSTRIES, INC., EUROPEAN AMERICAN ARMORY, doing business as E.A.A. Corp., EMCO, INC., EXCAM, INC., FREEDOM ARMS CO., FIREARMS IMPORT AND EXPORT CORP., GLOCK, INC., GRENDEL, INC., H & R 1871, INC., formerly known as Haskell Mfg., Inc., HARRINGTON & RICHARDSON, INTERNATIONAL ARMAMENT CORPORATION, doing business as Interarms Industries, Inc., INTERNATIONAL DISTRIBUTORS, INC., JENNINGS FIREARMS, INC., K.B.I., INC., LLAMA GABILONDO Y CIA S.A., LORCIN ENGINEERING, MARLIN FIREARMS, INC., NAVEGAR, INC., doing business as Intratec Firearms, NEW ENGLAND FIREARMS, INC., formerly known as Harrington & Richardson, PARA ORDNANCE MFG., INC., PHOENIX ARMS, INC., also known as Raven Arms, Inc., R.G. INDUSTRIES, INC., RAM-LINE CORP., REMINGTON ARMS CO., INC., SAVAGE ARMS CORP., L.W. SEECAMP, STOSSEGER INDUSTRIES, STURM, RUGER AND COMPANY, INC., THOMPSON/CENTER ARMS, U.S. REPEATING ARMS, WESSON FIREARMS CO., KIESLER POLICE SUPPLY, LIGHT WEAPONS SYSTEMS, INC., CASPIAN ARMS, LTD., SIGARMS, INC., SMITH & WESSON CORP., SPRINGFIELD, INC., SUNDANCE INDUSTRIES, COBRAY FIREARMS, ACUSPORT CORP., AJ WHOLESALE GUN DISTRIBUTORS, INC., ALAMO LEATHER GOODS, INC., AMCHAR WHOLESALE, INC., ASHLAND SHOOTING SUPPLY, BANGER L.P., BRAZAS SPORTING ARMS, INC., BUMBLE BEE WHOLESALE, CHATTANOOGA SHOOTING SUPPLIES, INC., CONEVERA GUNS, INC., DAVIDSON'S, EAGLE EXIM, INC., ELLETT BROTHERS, FOX WHOLESALE, INC., GO/SPORTSMEN'S SUPPLY, INC., GRAF & SONS, GUNARAMA WHOLESALE, HILL COUNTRY WHOLESALE, INC., JACK FIRST, INC., J & S WHOLESALE, LEW HORTON DISTRIBUTING CO., LIPSEY'S, INC., MAURICE SPORTING GOODS, INC., MICRO SIGHT CO., NATIONWIDE SPORTS DISTRIBUTORS, P & B ENTERPRISES, POINT SPORTING GOODS, RILEY'S, INC., RSR WHOLESALE SOUTH, INC., SCHAUB DISTRIBUTORS, SCOTT WHOLESALE CO., INC., SG DISTRIBUTING/ANDREW'S SPORTING GOODS, SOUTHERN OHIO GUN DISTRIBUTORS, INC., SPORTS SOUTH, INC., AMERICAN SHOOTING SPORTS COUNCIL, INC., NATIONAL SHOOTING SPORTS FOUNDATION, INC., SPORTING ARMS AND AMMUNITION MANUFACTURER'S INSTITUTE, CALICO, INC., MITCHELL ARMS, INC.,
 
 OLYMPIC/SAFARI ARMS, FABBRICA D'ARMI PIETRO S.P.A., also known as Beretta Firearms, LIGHT WEAPONS SYSTEMS, INC., and S.W. DANIELS, INCORPORATED, Defendants.
 Docket Nos. 99-7753, 99-7785, 99-7787
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: March 13, 2000
Certified to New York Court of Appeals: August 16, 2000
Decided by New York Court of Appeals: April 26, 2001
Decided: August 30, 2001
 Defendant gun manufacturers appeal the judgment entered on May 28, 1999 and amended on June 8, 1999 in the United States District Court for the Eastern District of New York (Weinstein, J.), following a jury verdict for plaintiffs on the claim that defendants were negligent in the marketing and distribution of handguns.
 Vacated and remanded.
 
 
 1
 LAWRENCE S. GREENWALD, Baltimore, Maryland (Nancy E. Paige, Catherine A. Bledsoe, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, Maryland; Lawrence G. Keane, Pino & Associates, White Plains, New York; Daniel T. Hughes, Erin A. O'Leary, Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, New York, New York, of counsel), for Defendants-Appellants Beretta U.S.A. Corp. and American Arms, Inc.
 
 
 2
 TIMOTHY A. BUMANN, Budd Larner Gross Rosenbaum Greenberg & Sade, Atlanta, Georgia (Geoffrey Gaulkin, Dana S. Mancuso, Budd Larner Gross Rosenbaum Greenberg & Sade, Short Hills, New Jersey; Barry R. Ostrager, Mary Beth Forshaw, Gerald E. Hawxhurst, Simpson Thacher & Bartlett, New York, New York; Andrew Zajac, Fiedelman & McGaw, Jericho, New York, of counsel), for Defendants-Appellants Taurus International Manufacturing, Inc. and Colt's Manufacturing Co., Inc.
 
 
 3
 BARRY R. OSTRAGER, New York, New York (Mary Beth Forshaw, Gerald E. Hawxhurst, Simpson Thacher & Bartlett, New York, New York; Andrew Zajac, Fiedelman & McGaw, Jericho, New York, of counsel), for Defendant-Appellant Colt's Manufacturing Co., Inc.
 
 
 4
 MARC E. ELOVITZ, New York, New York (Michael S. Feldberg, Kefira R. Wilderman, Schulte Roth & Zabel LLP, New York, New York; Elisa Barnes, New York, New York; Denise Dunleavy, Weitz & Luxenberg, New York, New York, of counsel), for Plaintiffs-Appellees Gail Fox and Stephen Fox.
 
 
 5
 ELISA BARNES, New York, New York, for Plaintiffs-Appellees Gail Fox and Stephen Fox.
 
 
 6
 John B. Glendon, Pepper Hamilton LLP, New York, New York (James M. Beck, Pepper Hamilton LLP, Philadelphia, Pennsylvania; Hugh F. Young, Jr., Product Liability Advisory Council, Inc., Reston, Virginia, of counsel), filed a brief for Product Liability Advisory Council, Inc. as Amicus Curiae in support of Defendants-Appellants.
 
 
 7
 Peter J. Romatowski, Washington, D.C. (Victor E. Schwartz, Mark A. Behrens, Christopher J. McGuire, Crowell & Moring LLP, Washington, D.C.; Robin S. Conrad, National Chamber Litigation Center, Inc., Washington, D.C., of counsel), filed a brief for Chamber of Commerce of the United States as Amicus Curiae in support of Defendants-Appellants.
 
 
 8
 Pierce Gore, New York, New York (Steven E. Fineman, Robert J. Nelson, Jonathan D. Selbin, Lieff, Cabraser, Heimann & Bernstein, LLP, New York, New York, of counsel), filed a brief for The Cities of Boston, Massachusetts, Camden, New Jersey, Chicago, Illinois, Los Angeles, The City and County of San Francisco, Sacramento, Oakland, Berkeley, East Palo Alto, Compton, Inglewood and West Hollywood and the Counties of Los Angeles, Alameda and San Mateo, California as Amici Curiae in support of Plaintiffs-Appellees.
 
 
 9
 Jeffrey R. White, Washington, D.C. (Richard H. Middleton, The Association of Trial Lawyers of America, Washington, D.C.; Misty Farris, Thomas Simms, Baron & Budd, P.C., Dallas, Texas, of counsel), filed a brief for The Association of Trial Lawyers of America as Amicus Curiae in support of Plaintiffs-Appellees.
 
 
 10
 Rachana Bhowmik, Washington, D.C. (Dennis A. Henigan, Jonathan E. Lowy, Brian J. Siebel, Allen Rostron, Center to Prevent Handgun Violence, Washington, D.C., of counsel), filed a brief for The Center to Prevent Handgun Violence, The American Academy of Pediatrics, The American Association of Suicidology, The American Jewish Congress Commission on Law and Social Action, Common Cause, The Educational Fund to End Handgun Violence, The National Association of Elementary School Principals, The National Association of School Psychologists, The National Association of Secondary School Principals, The National Spinal Cord Injury Association, and Trial Lawyers for Public Justice as Amici Curiae in support of Plaintiffs-Appellees.
 
 
 11
 Eliot Spitzer, Attorney General of the State of New York, Albany, New York (Preeta D. Bansal, Michael S. Belohlavek, Daniel Smirlock, Daniel Feldman, Natalie Gomez-Velez, Sachin S. Pandya, Adam L. Aronson, Office of the Attorney General, New York, New York, of counsel), for Amicus Curiae the State of New York.
 
 
 12
 Michael D. Hess, Corporation Counsel, New York, New York (Gail Rubin, Eric Proshansky, New York, New York, of counsel), for Amicus Curiae the City of New York.
 
 
 13
 Before: CARDAMONE, CABRANES, Circuit Judges, and TRAGER*, District Judge.
 
 CARDAMONE, Circuit Judge:
 
 14
 The present action against numerous handgun manufacturers was instituted by the relatives of several victims of handgun violence to recover damages and, according to an amicus brief, to attempt to halt the injury and death of teenage youths - the victims of armed youthful criminals. The suit went to trial where a jury held several manufacturers liable for failing to exercise reasonable care to prevent their handguns from falling into the hands of criminals and minors. The manufacturers appealed to this Court raising novel questions of New York law. Because of their novelty and difficulty we certified them to the New York Court of Appeals for resolution. That Court has now answered those questions definitively. The answers require reversal of the judgment and dismissal of the suit.
 
 
 15
 Defendants Beretta U.S.A. Corp., Taurus International Manufacturing, Inc., and American Arms, Inc.,[1] all major gun manufacturers, appeal the judgment entered on May 28, 1999 and amended on June 8, 1999 in the United States District Court for the Eastern District of New York (Weinstein, J.), following a jury verdict in favor of plaintiffs Gail and Stephen Fox on their claim that defendants were negligent in the marketing and distribution of their handguns. Hamilton v. Accu-Tek, 62 F. Supp. 2d 802 (E.D.N.Y. 1999) (Hamilton I). We heard argument in March 2000, and in August 2000 certified two questions of state law to the New York Court of Appeals. Hamilton v. Beretta U.S.A. Corp., 222 F.3d 36 (2d Cir. 2000) (Hamilton II). That Court accepted certification the next month and in April 2001 handed down a unanimous decision with respect to both questions. Hamilton v. Beretta U.S.A. Corp., No. 36, 96 N.Y.2d 222, 750 N.E.2d 1055, 727 N.Y.S.2d 7 (N.Y. Apr. 26, 2001) (forthcoming at 96 N.Y.2d 222) (Hamilton III). Based on the response from the New York Court of Appeals, we vacate the judgment of the district court and remand the case with instructions to it to enter judgment dismissing plaintiffs' complaint.
 
 BACKGROUND
 A. Litigation in the District Court
 
 16
 The facts of the case are discussed in detail in the district court's thorough opinion and in our original opinion on appeal, familiarity with which will be assumed. See Hamilton II, 222 F.3d at 40-41; Hamilton I, 62 F. Supp. 2d at 808-11. We will discuss the facts only briefly here.
 
 
 17
 Gail Fox and her son Stephen, together with other relatives of handgun victims, brought this suit against numerous handgun manufacturers after Stephen was permanently disabled in a handgun shooting incident in 1994 at the age of 16. Hamilton II, 222 F.3d at 39, 40; Hamilton I, 62 F. Supp. 2d at 808-09. The district court dismissed plaintiffs' product liability and fraud claims on defendants' initial motion for summary judgment, but allowed the suit to proceed to trial on a negligent marketing theory. Hamilton II, 222 F.3d at 40; Hamilton I, 62 F. Supp. 2d at 810.
 
 
 18
 At trial, plaintiffs pursued the theory that the defendant handgun manufacturers had marketed and distributed their products in a negligent fashion that directly fostered an illegal underground market in handguns, thereby furnishing the weapons involved in the shootings that precipitated the suit. Hamilton II, 222 F.3d at 40. Plaintiffs contended defendants had a duty to exercise reasonable care in the marketing and distribution of handguns in light of four factors: (1) their ability to control such marketing and distribution; (2) their knowledge that large numbers of their guns entered the illegal market for ultimate criminal use; (3) New York's strict firearms regulation policy; and (4) the uniquely lethal nature of the handguns. Id. Because only one of the handguns in question had been recovered, plaintiffs further argued that traditional common law principles of causation should be eschewed in favor of a market share theory of liability, under which defendants would be held severally liable for the resulting damages in proportion to their respective shares of the handgun market. Id.
 
 
 19
 Following a four-week trial, the jury returned a verdict finding that 15 of the 25 defendants had failed to exercise reasonable care in the marketing or distribution of their handguns. It ultimately made an award of $3.95 million in damages to Stephen Fox and an award of $50,000 to his mother, assessed against only three defendants under a market share theory: American Arms (0.23 percent liability), Beretta U.S.A. (6.03 percent liability), and Taurus International Manufacturing (6.08 percent liability). Hamilton II, 222 F.3d at 40-41; Hamilton I, 62 F. Supp. 2d at 811.
 
 
 20
 When defendants moved for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, the district court denied the motion. Hamilton II, 222 F.3d at 41; Hamilton I, 62 F. Supp. 2d at 848. The trial court thought defendants had a duty to exercise reasonable care in marketing and distributing their handguns for several reasons: in light of their close relationship with third-party distributors and retailers, common law tort principles applicable to the manufacture of dangerous products, the perceptible risk that negligent marketing and distribution would promote the criminal misuse of handguns, and the ability of the defendant manufacturers to restructure their affairs to reduce such risk and to spread the costs of risk reduction to consumers. Hamilton I, 62 F. Supp. 2d at 818-27. The trial court also found the market share theory of liability appropriate, citing the above factors as well as the asserted fungibility of the handguns, and plaintiffs' practical difficulties in proving a chain of causation. Id. at 833-46. It was on this reasoning that judgment was entered for plaintiffs.
 
 
 21
 B. Certification to the New York Court of Appeals
 
 
 22
 The three defendants who had been found liable for damages appealed the denial of their Rule 50(b) motion to this Court, challenging the district court's rulings on the duty of care and market share liability as well as the sufficiency of the evidence that they breached any duty or proximately caused plaintiffs' injuries. Hamilton II, 222 F.3d at 41. In addition to the parties' briefs, we received five helpful amicus briefs and a separate letter from the Attorney General of New York State in which he requested certification of the duty question to the New York Court of Appeals. Id. at 38-39, 41.
 
 
 23
 Of the two amici curiae supporting reversal, the Chamber of Commerce of the United States argued against the imposition of a duty of care, and the Product Liability Advisory Council, Inc. asserted the inapplicability of the market share theory of liability. The three remaining amicus briefs all supported affirmance. The Center to Prevent Handgun Violence and like-minded amici argued in a single brief that defendants did owe plaintiffs the asserted duty of care. A number of cities and counties, including Boston, Chicago, and Los Angeles, also argued for a duty of care but, like New York's Attorney General, suggested certification of this question. Finally, the Association of Trial Lawyers of America contended the case presented a suitable context for application of the market share theory.
 
 
 24
 Because defendants' appeal presented important and complex questions of state law for which no dispositive New York authority could be found, we certified the following two questions of law to the state's highest court in an opinion filed on August 16, 2000:
 
 
 25
 I Whether the defendants owed plaintiffs a duty to exercise reasonable care in the marketing and distribution of the handguns they manufacture?
 
 
 26
 II Whether liability may be apportioned on a market share basis, and if so, how?
 
 
 27
 Hamilton II, 222 F.3d at 46. We clarified that our manner of framing "these questions is in no way meant to restrict the Court of Appeals from considering any state law issues it might wish to resolve in connection with this appeal." Id. at 39. At the same time, we "reserve[d] decision on whether the jury had sufficient evidence to support its findings that defendants breached their duty, if any, and in so doing proximately caused plaintiffs' injuries." Id. at 41.
 
 DISCUSSION
 
 28
 A. The Decision of the New York Court of Appeals
 
 
 29
 The New York Court of Appeals accepted certification of both questions on September 12, 2000. Hamilton v. Beretta U.S.A. Corp., 95 N.Y.2d 878 (2000) (mem.). On April 26, 2001, that Court handed down a unanimous decision "answer[ing] both questions in the negative." Hamilton III, 96 N.Y.S.2d at 230, 727 N.Y.S.2d at 11.
 
 
 30
 It began by emphasizing that the foreseeability of harm, standing alone, does not define the duty of care but "merely determines the scope of the duty once it is determined to exist." Id., 96 N.Y.2d at 232, 750 N.E.2d at 1060, 727 N.Y.S.2d at 12. Contrary to the district court's reasoning, the Court of Appeals found that defendants' relationships with their dealers and distributors did not "place[] the defendant[s] in the best position to protect against the risk of harm," given the "very large" pool of potential plaintiffs and the "remote" connection between defendants, the criminal wrongdoers, and plaintiffs. Id., 96 N.Y.S.2d at 232, 727 N.Y.S.2d at 12. The Court distinguished the products liability cases cited by plaintiffs on the rationale that those suits involved products that failed to include adequate safety features or warnings, unlike the present suit where "defendants' products are concededly not defective" and "if anything,... work too well." Id., 96 N.Y.S.2d at 235, 727 N.Y.S.2d at 15.
 
 
 31
 The Court further noted plaintiffs' argument "that a general duty of care arises out of the gun manufacturers' ability to reduce the risk of illegal gun trafficking through control of the marketing and distribution of their products." Id., 96 N.Y.2d at 235 750 N.E.2d at 1063. Given the lack of evidence of "any statistically significant relationship between particular classes of dealers and crime guns," however, it reasoned that imposition of such a general duty of care would create large, indeterminate classes of plaintiffs and defendants "whose liability might have little relationship to the benefits of controlling illegal guns." Id., 96 N.Y.S.2d at 235, 750 N.E.2d at 1063. Finally, in response to plaintiffs' assertion that defendants negligently entrusted their dangerous products to irresponsible dealers and distributors, the Court acknowledged that such a duty of care might arise in certain instances, but highlighted the lack of evidence in this case that defendants knew or had "reason to know [their] distributors [were] engaging in substantial sales of guns into the gun-trafficking market on a consistent basis." Id., 96 N.Y.S.2d at 235 & n. 5, 727 N.Y.S.2d at 15. The Court of Appeals concluded, "In sum, analysis of this State's longstanding precedents demonstrates that defendants - given the evidence presented here - did not owe plaintiffs the duty they claim; we therefore answer the first certified question in the negative." Id., 96 N.Y.S.2d at 240, 727 N.Y.S.2d at 18.
 
 
 32
 In light of its resolution of the duty question, the Court noted that it "arguably need not reach the market share issue" but nonetheless chose to answer the second certified question "because of its particularly significant role in this case." Id., 96 N.Y.2d at 240, 750 N.E.2d at 1066, 727 N.Y.S.2d at 18. In this context, it explained that the leading precedent applying the market share theory (involving the drug DES) had relied on three principal factors: "(1) the manufacturers acted in a parallel manner to produce an identical, generically marketed product; (2) the manifestations of injury were far removed from the time of ingestion of the product; and (3) the Legislature made a clear policy decision to revive these time-barred... claims." Id., 96 N.Y.2d at 240,750 N.E.2d at 1066, 727 N.Y.S.2d at 18 (citing Hymowitz v. Eli Lilly & Co., 73 N.Y.2d 487, 508 (1989)). In the present case, by contrast, the Court remarked that "guns are not identical, fungible products" and defendants' marketing techniques were not uniform. Id., 96 N.Y.2d at 240, 750 N.E.2d at 1066, 727 N.Y.S.2d at 18. After explaining that plaintiffs' difficulties in proving causation could not alone warrant application of the market share theory, the Court concluded that "plaintiffs here have not shown a set of compelling circumstances... justifying a departure from tradition common-law principles of causation" and therefore answered the second certified question "in the negative" as well. Id., 96 N.Y.2d at 240, 750 N.E.2d at 1066, 727 N.Y.S.2d at 18.
 
 B. Application
 
 33
 We receive the decision of the New York Court of Appeals on the certified questions "bearing in mind that the highest court of a state 'has the final word on the meaning of state law.'" County of Westchester v. Comm'r of Transp., 9 F.3d 242, 245 (2d Cir. 1993) (per curiam) (quoting Deeper Life Christian Fellowship, Inc. v. Sobol, 948 F.2d 79, 84 (2d Cir. 1991)). Thus, we are obligated to apply New York law as determined by its highest court. Cf. Home Ins. Co. v. Am. Home Prods. Corp., 902 F.2d 1111, 1113 (2d Cir. 1990).
 
 
 34
 Upon receipt of the state court decision, we asked the parties to submit letter briefs detailing their views on how the present appeal should be resolved in conformity with the state court's answers to the certified questions. In their letter briefs plaintiffs declare, first, that the Court of Appeals failed to answer the certified questions as framed by this Court and, second, that even assuming the questions were properly answered, a remand is appropriate to permit additional discovery and a new trial. We address both of these points.
 
 1. Answers to the Certified Questions
 
 35
 Plaintiffs contend the Court of Appeals' decision was not responsive to the first certified question to the extent it focused on defendants' duty to control the conduct of third-party distributors and retailers, see Hamilton III, 96 N.Y.2d at 232, 750 N.E.2d at 1060, 727 N.Y.S.2d at 12, and imported concepts of causation into the duty analysis, see id., 96 N.Y.2d at 232, 750 N.E.2d at 1060, 727 N.Y.S.2d at 12. But plaintiffs cite the Court of Appeals out of context. As we recognized in certifying this question, the existence under New York law of a duty to exercise care in marketing and distributing a product would depend upon a number of moral, logical, and social policy factors. Hamilton II, 222 F.3d at 42. And among these factors, we specifically identified both the appropriateness of requiring defendants to restructure their relations with third parties in the handgun market, id. at 43, as well as whether defendants had any real opportunity to prevent the harm that ensued, id. at 44. It was in this context that the Court of Appeals discussed the asserted duty to control the conduct of third parties as well as defendants' role in the chain of causation, and hence its decision was entirely responsive to the first certified question.
 
 
 36
 Plaintiffs further contend the Court of Appeals' discussion of causation not only intruded on our reservation of jurisdiction to decide the sufficiency of the evidence with respect to causation, but also violated the principle that the sufficiency of the evidence presents a question of federal law under the Erie doctrine, citing to Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 15 (2d Cir. 2000). But, as just discussed, plaintiffs misconstrue the Court of Appeals' discussion of causation - which focused only on defendants' ability to prevent injury as a factor giving rise to a duty - and we do not believe its discussion could reasonably be construed as reaching out to decide the sufficiency of the evidence of causation. But, even if this were the case, our agreement that the evidence was insufficient moots any possible jurisdictional conflict. See Fed. Home Loan Mortgage Corp. v. New York State Div. of Hous. & Cmty. Renewal, 83 F.3d 45, 47 (2d Cir. 1996).
 
 
 37
 In the final analysis, plaintiffs do not contest that the existence of defendants' alleged duty presented a question of New York law. Hence, it was for New York's highest court to decide to what extent the existence of that duty depended upon such various concomitant factors as defendants' third-party relationships and the chain of causation. The Court of Appeals specifically considered "the evidence presented here" in light of "th[e] State's longstanding precedents" and concluded as a matter of New York law that "defendants... did not owe plaintiffs the duty they claim." Hamilton III, 96 N.Y.2d at 240, 750 N.E.2d at 1066, 727 N.Y.S.2d at 18. That ruling is final, and we may not revisit it. County of Westchester, 9 F.3d at 245.
 
 
 38
 Moreover, it is black-letter law in New York that a plaintiff cannot recover on a negligence claim absent some duty of care owed by defendant to the plaintiff. As the Court of Appeals recently stated, "A finding of negligence may be based only upon the breach of a duty. If, in connection with the acts complained of, the defendant owes no duty to the plaintiff, the action must fail." Darby v. Compagnie Nat'l Air France, No. 87, 96 N.Y.2d 343, 346 753 N.E.2d 160, 728 N.Y.S.2d 731, 733 (N.Y. June 7, 2001), answers to certified questions conformed to, Nos. 99 7848, 99 9208, 2001 WL 699535, 2001 U.S. App. LEXIS 14153 (2d Cir. June 20, 2001) (table decision); accord Waters v. New York City Hous. Auth., 69 N.Y.2d 225, 231 (1987); Pulka v. Edelman, 40 N.Y.2d 781, 782 (1976); 79 N.Y. Jur. 2d Negligence §14 (1989 & Supp. 2000). Because there was no duty owed in this case, there can be no liability. Consequently, the questions of breach and causation on which we reserved jurisdiction are now moot, and defendants are entitled to judgment as a matter of law on the negligence claim. See Caruolo v. John Crane, Inc., 226 F.3d 46, 51 (2d Cir. 2000) (Rule 50 standard of review).
 
 2. Remand for Further Discovery and Retrial
 
 39
 Given the failure of their claim, plaintiffs urge that the appropriate course of action for us to follow is not to dismiss the action, but to remand for further discovery and retrial. Plaintiffs cite a number of decisions in which remand was ordered, but closer inspection reveals these cases to be inapposite. Three involved claims that had been dismissed by the district court that were revived by a decision of this Court or of the New York Court of Appeals. Argentina v. Emery World Wide Delivery Corp., 188 F.3d 86, 88-89 (2d Cir. 1999) (per curiam); Joblon v. Solow, 152 F.3d 55, 57 (2d Cir. 1998); Diduck v. Kaszycki & Sons Contractors, Inc., 874 F.2d 912, 918-19 (2d Cir. 1989). One involved a statutory amendment that rendered once-irrelevant evidence material to a benefits claim. Sousa v. Callahan, 143 F.3d 1240, 1242, 1245 (9th Cir. 1998). Others involved errors in the exclusion of defense evidence at a criminal trial, United States v. Onumonu, 967 F.2d 782, 790-91 (2d Cir. 1992), or first-time pronouncements by a circuit court of the description of the standards and burdens of persuasion and proof in civil proceedings, Brown v. Apfel, 192 F.3d 492, 499 (5th Cir. 1999); duPont v. Brady, 828 F.2d 75, 78-79 (2d Cir. 1987).
 
 
 40
 In short, plaintiffs have brought no case to our attention in which the proffered evidence was properly admitted and considered at trial, that same evidence was found on appeal to be legally insufficient to make out a claim, and the case was remanded in order to permit plaintiff to conduct further discovery to cure the defect.
 
 
 41
 More on point, we think, is Denny v. Ford Motor Co., 79 F.3d 12 (2d Cir. 1996) (per curiam). There, defendant appealed a jury verdict on two related New York causes of action on the basis that it was inconsistent, asserting that the actions were in fact identical and that the jury could not have logically found defendant liable on one but not the other. Id. at 13; see also Denny v. Ford Motor Co., 42 F.3d 106, 107 (2d Cir. 1994). We certified questions to the New York Court of Appeals asking whether the claims were identical and, if not, whether the claim for which the jury imposed liability was subsumed by the other claim. Denny, 42 F.3d at 115. The Court of Appeals accepted certification and, over a lengthy dissent, answered each of these questions in the negative. Denny v. Ford Motor Co., 87 N.Y.2d 248, 263-64 (1995). Still, defendant continued to argue to this Court that retrial was required because the verdict was inconsistent. Denny, 79 F.3d at 13. We rejected this argument recognizing that the defendant was not troubled by inconsistency, but rather wanted a new trial where it could ask the trial judge for instructions differentiating the two claims. In declining to grant this relief, we observed that the state's highest court had not adopted in its decision any new theories, and in clarifying New York law had utilized existing case law. Id.
 
 
 42
 Similarly, in the present appeal, what plaintiffs essentially seek is an opportunity to retry the case. Yet the Court of Appeals' decision, while it clarified New York law, did not break from prior law but rather relied explicitly on an "analysis of this State's longstanding precedents." Hamilton III, 96 N.Y.2d at 240, 750 N.E.2d at 1066, 727 N.Y.S.2d at 18. Much like Denny, which raised novel questions about the interrelationship of two well-established causes of action (sufficiently novel to produce a dissent at the Court of Appeals), the present case raised novel questions about the application of well-established principles of negligence to a new context. But in answering these questions here and in Denny, the New York Court of Appeals rested its decision on earlier, well-established precedents. It did not overrule any of its prior decisions, and it did not set forth any new rule of law, as plaintiffs now contend. Indeed, the New York Court of Appeals flatly declined to adopt the "novel" theory of liability, Hamilton III, 96 N.Y.2d at 240, 750 N.E.2d at 1066, 727 N.Y.S.2d at 18, pressed by appellants.
 
 
 43
 Accordingly, unlike in Brown or duPont - in which the circuit courts ruled on matters of first impression with no reference to existing circuit precedents - the New York Court of Appeals in this case relied explicitly on prior state law decisions. Plaintiffs could have brought the present case on a theory of duty consistent with those precedents, but they chose not to do so. Having tried the case on the theory chosen, plaintiffs are not entitled to retry it on a new theory. Denny, 79 F.3d at 13.
 
 CONCLUSION
 
 44
 Accordingly, for the reasons set forth above, the judgment of the district court is hereby vacated. The case is remanded to that court with instructions to it to enter judgment dismissing plaintiffs' complaint. Each party shall bear its own costs.
 
 
 
 NOTE:
 
 
 *
 Hon. David G. Trager, United States District Court Judge for the Eastern District of New York, sitting by designation.
 
 
 [1]
 Defendant Colt's Manufacturing Co., Inc., although named as an appellant in the caption, was denied standing to join the appeal. Hamilton v. Beretta U.S.A. Corp., Nos. 99 7753, 99 7785, 99 7787, 225 F.3d 645, 2000 WL 1160600, at *1, 2000 U.S. App. LEXIS 20910, at *2-3 (2d Cir. Aug. 16, 2000) (table decision).