OPINION OF THE COURT
Debra Silber, J.
The decision/order on these motions is as follows:
Defendant Benito Gonzalez, doing business as Neighborhood Grocery, moves for summary judgment dismissing the complaint against him and all cross claims. Defendant Albert Long also moves for summary judgment dismissing the complaint against him or, alternatively, for summary judgment against Gonzalez on his cross claims for contractual indemnification. Plaintiff opposes both motions. Gonzalez opposes the Long motion in part. For the reasons set forth herein, the Gonzalez motion is granted and the Long motion is denied.
Plaintiff claims he sustained personal injuries on November 4, 2009, when he tripped and fell on a sidewalk located appurtenant to defendant Gonzalez’s grocery store, which is located on the ground floor of an apartment building owned by defendant Long, allegedly because of a defect in the metal cellar doors on the sidewalk. Defendants claim that they neither caused nor had notice of any defective condition and that any defect in the cellar doors was trivial as a matter of law. Defendant Gonzalez also maintains that he owed plaintiff no duty of care with respect to the maintenance of the cellar doors. He also argues that codefendant Long, who owns the property, has no actionable indemnification claim against him and asks that Long’s cross claims be dismissed.
Plaintiff testified at his examination before trial (EBT) that he went into the defendant’s store to buy cigarettes. Upon leaving, he was walking on Jackson Street and moved aside to let a person with a baby carriage go by. As he did so, he caught his foot on the metal cellar doors on the sidewalk. The doors were closed at the time of the accident. He fell and was injured.
Black and white copies of photographs attached to both the defendants’ motions and plaintiff’s opposition show what is described by plaintiff as visible gaps between the two cellar doors, and gaps between one of the doors and its metal frame. *374 Plaintiffs testimony states the photos show the condition of the cellar doors at the time of his accident.
Gonzalez’s son, Benito, Jr., testified at his EBT that he was present at the store when the accident occurred. He saw plaintiff tell the ambulance driver he tripped over the cellar doors. He testified that everyone who worked at the grocery used the doors, as they provided access to the cellar, where the store’s inventory was kept. He himself used them about 10 times a day. In the four years he worked at the store, he never made any repairs to the cellar doors. He never replaced them. He never had received any complaints about them. He said that it was his understanding that the lease provides that it is the store’s responsibility to fix the cellar doors if they need to be repaired. However, the cellar is not mentioned in the lease at all, nor is there any reference to the cellar doors.
Albert Long, the building’s owner, testified at his EBT that he’s owned the building for 14 years and the grocery is the commercial tenant. He himself visits the property at least every other week to check on the building, which has six residential apartments. He is “not an absentee landlord.” He checks building conditions, including the sidewalk. He is unaware of any prior accidents involving the cellar doors. He’s never repaired the cellar doors. They were there when he purchased the building. He made repairs to the sidewalk in 2001 or 2002, because there were cracks in the sidewalk. He hired the company and the grocery split the cost with him. He said it is his understanding that it is the store’s responsibility to fix the cellar doors if they need to be repaired.
Defendants’ Motions to Dismiss Plaintiffs Action
Defendants both aver that, if there was a defect, it was trivial. Generally, whether a dangerous or defective condition exists depends on the particular facts of each case, and is properly a question of fact for the jury unless the defect is demonstrated to be trivial as a matter of law. (See Trincere v County of Suffolk, 90 NY2d 976, 977 [1997]; Fisher v JRMR Realty Corp., 63 AD3d 677 [2d Dept 2009]; DeLaRosa v City of New York, 61 AD3d 813 [2d Dept 2009].) Property owners (and their commercial tenants) may not be held liable for trivial defects not constituting a trap or nuisance, over which a pedestrian might merely stumble, stub his or her toe, or trip. (See Trincere v County of Suffolk, 90 NY2d at 977; DeLaRosa v City of New York, 61 AD3d at 813; Shiles v Carillon Nursing & Rehabilitation Ctr., LLC, 54 AD3d 746 [2d Dept 2008].) In determining whether a defect is trivial *375 as a matter of law, the court must examine all of the facts presented, including the width, depth, elevation, irregularity and appearance of the defect, along with the time, place and circumstance of the injury. (Trincere v County of Suffolk, 90 NY2d at 978, quoting Caldwell v Village of Is. Park, 304 NY 268, 274 [1952]; Fontana v Winery, 84 AD3d 863, 864-865 [2d Dept 2011].) There is no “minimal dimension test” or “per se rule” that the condition must be of a certain height or depth in order to be actionable. (See Trincere v County of Suffolk, 90 NY2d at 977; Ricker v Board of Educ. of Town of Hyde Park, 61 AD3d 735 [2d Dept 2009].)
Defendants have not made a prima facie showing that, as a matter of law, the allegedly defective condition did not constitute a trap or nuisance and was merely a non-actionable trivial defect. Neither defendant included in his papers the report of any expert, such as an engineer, who might have inspected the sidewalk area and measured the alleged defect(s) in the subject cellar doors and opined about their size and/or significance and whether or not they (or it) are (is) indeed trivial. (See e.g. DePascale v E&A Constr. Corp., 74 AD3d 1128, 1131 [2d Dept 2010]; Zalkin v City of New York, 36 AD3d 801, 802 [2d Dept 2007]; Nathan v City of New Rochelle, 282 AD2d 585, 585-586 [2d Dept 2001]; Lopez v New York City Hous. Auth., 245 AD2d 273, 274 [2d Dept 1997].) Defendants do not provide any proof that the alleged height differential is less than one-half inch and thus in compliance with Administrative Code of the City of New York § 19-152. (See Rossy v Miracle Pentecostal Church, 2012 NY Slip Op 30216[U] [Sup Ct, NY County 2012]; Green v City of New York, 76 AD3d 508 [2d Dept 2010].) Finally, defendants’ reliance upon fuzzy photographs to demonstrate that the defect was too trivial to be actionable is misplaced. The photographs are of poor quality and do not establish that the alleged defect is trivial as a matter of law. (See e.g. Cohen v Tuneway Co., 35 AD3d 340, 341 [2d Dept 2006]; Corrado v City of New York, 6 AD3d 380, 380-381 [2d Dept 2004].)
Defendants next argue that they did not have actual or constructive notice of the alleged defect. This argument is unavailing. The condition of the cellar doors is not analogous to spilt liquid or garbage which has been strewn or blown into the area. To be clear, inasmuch as the alleged defect was not transient, temporary or moveable in nature, defendants’ claim that they did not have actual or constructive notice of the alleged defect is not an appropriate argument here. Because Mr. *376 Gonzalez testified that he and his staff used the doors at frequent intervals every day, he cannot claim that he did not have actual or constructive notice of the condition of the cellar doors. (See Colon v New York Eye Surgery Assoc., P.C., 77 AD3d 597, 597 [1st Dept 2010] [“The jury could have reasonably found, based on the photographs taken days after the accident and the testimony of defendant’s facility manager, that the entire property was inspected daily, giving defendant constructive notice”].) This is also true of Long’s testimony that he routinely inspected the building and the sidewalk (Long EBT at 32, line 5, through 33, line 8).
The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form to demonstrate the absence of any material issues of fact. (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986].) “Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers” (id.). Here, inasmuch as defendants have failed to make a prima facie showing that the defect was trivial, or that they did not have actual or constructive notice of the alleged defect, the branches of defendants’ motions which ask that the complaint be dismissed in its entirety on these grounds must be denied.
Defendant Gonzalez’s Motion to Dismiss on the Grounds He Owed No Duty of Care to Plaintiff
Administrative Code § 7-210, combined with section 19-152, imposes a nondelegable duty upon property owners to maintain and repair the sidewalk abutting their property, and specifically imposes liability upon property owners for injuries resulting from a violation of the statute. (See Collado v Cruz, 81 AD3d 542 [1st Dept 2011]; Stein v 1394 Hous. Corp., 31 Misc 3d 1224[A], 2011 NY Slip Op 50813[U] [Sup Ct, NY County 2011].) Section 7-210 provides in pertinent part:
“a. It shall be the duty of the owner of real property abutting any sidewalk ... to maintain such sidewalk in a reasonably safe condition.
“b. Notwithstanding any other provision of law, the owner of real property abutting any sidewalk . . . shall be liable for any injury to property or personal injury, including death, proximately caused by the failure of such owner to maintain such sidewalk in a reasonably safe condition. Failure to maintain such sidewalk in a reasonably safe condition shall include, *377 but not be limited, to, the negligent failure to install, construct, reconstruct, repave, repair or replace defective sidewalk flags and the negligent failure to remove snow, ice, dirt or other material from the sidewalk.”
The Administrative Code does not impose any duty on a commercial tenant, leaving that issue to the property owner and his contract (lease) with the tenant.
The 2003 amendments to this section of the Administrative Code transferred all liability for sidewalk defects from the city to the property owner, except owners of one-to-three-family homes that are either wholly or partially owner-occupied and used exclusively for residential purposes. Defendant Long is not exempt from this law, nor does he claim to be.
Section 7-210 thus shifts tort liability from the city to property owners who breach the requirements imposed by section 19-152. That is, the scope of a property owner’s responsibility regarding the repair and maintenance of sidewalks imposed by section 7-210 “mirrors the duties and obligations of property owners with regard to sidewalks set forth in Administrative Code section[ ] 19-152” (Rep of Comm on Transp at 4, Local Law Bill Jacket, Local Law No. 49 [2003] of City of NY). Therefore, section 7-210 must be read in conjunction with section 19-152.
With regard to the duty to repair, section 19-152 (a) provides that a property owner is required to repair “a defective sidewalk flag in front of or abutting such property,” which “contain[s] a substantial defect.” A substantial defect is defined to include many items which are enumerated, in pertinent part: “6. hardware defects which shall mean (i) hardware or other appurtenances not flush within 1/2” of the sidewalk surface or (ii) cellar doors that deflect greater than one inch when walked on, are not skid resistant or are otherwise in a dangerous or unsafe condition” (Administrative Code § 19-152 [a]).
The obligation to repair is thus not limited to defects in the actual masonry material of the sidewalk flag, but includes the hardware or other items installed in the sidewalk appurtenant to the owner’s property for the use and benefit of the property owner.
Cellar doors are therefore part of the property owner’s obligation under section 7-210. This is to be contrasted with covers for underground access, which, pursuant to title 34 of the Rules of the City of New York § 2-07, are considered to be owned by, *378 and the responsibility of, the applicable utility company. (See Crawford v City of New York, 98 AD3d 935 [2d Dept 2012]; Storper v Kobe Club, 76 AD3d 426 [1st Dept 2010].) Defendants’ references to this ordinance in their papers are not relevant to this matter.
Thus, Gonzalez, who was undisputedly the commercial tenant of the property abutting the purported accident location, could only be liable to plaintiff if the store actually created the condition that caused plaintiff’s injuries. (See Collado v Cruz, 81 AD3d 542 [2011]; Otero v City of New York, 213 AD2d 339, 339-340 [1st Dept 1995]; Williams v Azeem, 62 AD3d 988, 989 [2d Dept 2009].) There is no such claim here. Commercial tenants leasing all or part of the ground floor of a building have been held liable to third parties, for example, when they were found to have left the cellar doors open, and the plaintiff fell into the cellar. (Figueroa v Gueye, 66 AD3d 638 [2d Dept 2009]; Epps v Marco Polo Caterers, LLC, 2008 NY Slip Op 33534[U] [Sup Ct, NY County 2008]; Fobbs v Rahimzada, 39 AD3d 811 [2d Dept 2007].)
Further, the lease between Long and Gonzalez does not create a duty which runs from Gonzalez to the plaintiff, a pedestrian. (See Collado v Cruz, 81 AD3d 542 [2011]; Kennedy v C & C New Main St. Corp., 269 AD2d 499, 500 [2d Dept 2000]; DeCurtis v T.H. Assoc., 241 AD2d 536, 537 [2d Dept 1997]; Leslie v Shanik Bros. Inc., 2012 NY Slip Op 31986[U] [Sup Ct, Queens County 2012].) Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party. (See Espinal v Melville Snow Contrs., 98 NY2d 136, 138 [2002]; Darby v Compagnie Natl. Air France, 96 NY2d 343, 347 [2001]; Pulka v Edelman, 40 NY2d 781, 782 [1976]; Izzo v Proto Constr. & Dev. Corp., 81 AD3d 898 [2d Dept 2011].) Here, the issue is whether any such duty ran from Gonzalez to Langston, the plaintiff, given that Gonzalez’s lease was with Long. The existence and scope of a duty is a question of law. (See Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579, 585-586 [1994].) Under the applicable decisional law, a lease obligation, standing alone, will generally not give rise to tort liability in favor of a third party. (See Eaves Brooks Costume Co. v Y.B.H. Realty Corp., 76 NY2d 220, 226-227 [1990].) As a matter of public policy, the state’s courts have generally declined to impose liability to that degree. (Espinal v Melville Snow Contrs., 98 NY2d 136, 138-139 [2002].)
*379 The cellar doors which are the alleged cause of the accident provide access to the basement and are used exclusively by defendant Gonzalez and his employees. As these cellar doors are on the sidewalk, they must not create a hazard to pedestrians.
Thus, any failure of Gonzalez to repair any defect in the cellar doors, even if required under the lease, does not create a duty on his part to plaintiff.
Therefore, defendant Gonzalez is entitled to dismissal of the complaint insofar as asserted against him by the plaintiff.
Long’s Motion for Summary Judgment on His Cross Claims for Contractual Indemnification and Gonzalez’s Motion for Dismissal of Long’s Cross Claims
Defendant Long has moved for summary judgment on his cross claims for contractual indemnification against defendant Gonzalez. Gonzalez has, in turn, moved for dismissal of Long’s cross claims. It must be noted that neither party has objected to litigating the matter, in spite of the arbitration clause in the lease (¶ 23).
The right to contractual indemnification depends upon the specific language of the lease and “the promise to indemnify should not be found unless it can be clearly implied from the language and purpose of the entire agreement and surrounding circumstances.” (Reisman v Bay Shore Union Free School Dist., 74 AD3d 772, 773 [2d Dept 2010].) Further, a property owner seeking contractual indemnification must demonstrate that it is free from negligence inasmuch as it is precluded from being indemnified for its own wrongdoing (id.; General Obligations Law § 5-321). As Long has failed to do so, he is not entitled to contractual indemnification. As the clause in the lease is void and unenforceable, as is explained below, it is not merely a matter of declaring the issue premature. Thus, Gonzalez is entitled to dismissal of Long’s cross claims for indemnification.
Paragraph five of the lease for the premises[1] provides:
“Tenant has examined the demised premises, and accepts them in their present condition (except as otherwise expressly provided herein) and without any representations on the part of the Landlord or its agents as to the present or future condition of the said premises. The Tenant shall keep the demised premises in good condition, and shall *380 redecorate, paint and renovate the said premises as may be necessary to keep them in repair and good appearance. The Tenant shall quit and surrender the premises at the end of the demised term in as good condition as the reasonable use thereof will permit. The Tenant shall not make any alterations, additions, or improvements to said premises without the prior written consent of the Landlord. All erections, alterations, additions and improvements, whether temporary or permanent in character, which may be made upon the premises either by the Landlord or the Tenant, except furniture or movable trade fixtures installed at the expense of the Tenant, shall be the property of the Landlord and shall remain upon and be surrendered with the premises as a part thereof at the termination of this Lease, without compensation to the Tenant. The Tenant further agrees to keep said premises and all parts thereof in a clean and sanitary condition and free from trash, flammable material and other objectionable matter. If this lease covers premises, all or a part of which are on the ground floor, the Tenant further agrees to keep the sidewalks in front of such ground floor portion of the demised premises clean and free of obstructions, snow and ice.”
Paragraph eight of the lease requires the tenant to indemnify the landlord as follows:
“The Landlord shall not be responsible for the loss of or damage to property, or injury to persons, occurring in or about the demised premises, by reason of any exiting or future condition, defect, matter or thing in said demised premises or the property of which the premises are a part, or for the acts, omissions or negligence of other persons or tenants in and about the said property. The Tenant agrees to indemnify and save the Landlord harmless from all claims and liability for losses or damage to property, or injuries to persons occurring in or about the demised premises.”
Gonzalez argues that the provision in paragraph eight of the lease is void, both as against public policy and under General Obligations Law § 5-321, which states:
“Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property exempting the lessor from liability for dam *381 ages for injuries to person or property caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable.”
“Pursuant to General Obligations Law § 5-321, a lease provision which purports to exempt a lessor from liability for its own acts of negligence is void and unenforceable.” (Rego v 55 Leone Lane, LLC, 56 AD3d 748, 749 [2d Dept 2008].) If paragraph eight of the lease included the clause “unless caused by or due to the negligence of the Owner, its agents, servants or employees,” the indemnification clause herein would not be void. (See Bellefleur v Newark Beth Israel Med. Ctr., 66 AD3d 807 [2d Dept 2009]; State of New York v Travelers Prop. Cas. Ins. Co., 280 AD2d 756, 757-758 [3d Dept 2001].) Such an indemnification provision does not exempt the owner from liability resulting from its own negligence; therefore, it does not violate General Obligations Law § 5-321. However, as is explained below, it would not entitle Long to indemnification in this matter.
It is well established that “[a] party seeking contractual indemnification must prove itself free from negligence, because to the extent its negligence contributed to the accident, it cannot be indemnified therefor” (Hirsch v Blake Hous., LLC, 65 AD3d 570, 571 [2d Dept 2009].)
The indemnification provision at issue herein requires Gonzalez to “indemnify and save the Landlord harmless from all claims and liability for losses or damage to property, or injuries to persons occurring in or about the demised premises.” This indemnification provision is clearly void and unenforceable under General Obligations Law § 5-321 because it shifts the entire responsibility for any damages to the tenant regardless of the landlord’s own negligence. (Rego, 56 AD3d at 749; Ben Lee Distribs., Inc. v Halstead Harrison Partnership, 72 AD3d 715 [2d Dept 2010].) Indeed, the indemnification provision improperly contemplates a complete rather than partial shifting of liability from landlord to tenant inasmuch as it made no exception for defendant’s own negligence. (Wagner v Ploch, 85 AD3d 1547 [4th Dept 2011]; Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co., 89 NY2d 786, 793 [1997], rearg denied 90 NY2d 1008 [1997]; DeSabato v 674 Carroll St. Corp., 55 AD3d 656, 659 [2d Dept 2008].) The indemnification clause in question, *382 which shifts the entire responsibility for damages to third-party defendant regardless of defendant’s own negligence, renders the entire clause void as against public policy and wholly unenforceable. (Mendieta v 333 Fifth Ave. Assn., 65 AD3d 1097, 1100-1101 [2d Dept 2009]; Rego v 55 Leone Lane, LLC, 56 AD3d at 749-750.)
However, a property owner can contract with a commercial tenant for indemnification of its own negligence, but only if the lease is negotiated (1) at arm’s length, (2) between sophisticated parties, (3) evinces a clear intent to provide indemnification, and (4) the lease uses insurance to allocate the risk of liability to third parties. (Great N. Ins. Co. v Interior Constr. Corp., 7 NY3d 412 [2006].) None of these elements is present here. In particular, the lease does not require Gonzalez to obtain any liability insurance and does not therefore require that the owner be named as an additional insured. There is no clear intent in the lease to provide indemnification of the landlord’s negligence, and there is no claim these are “sophisticated parties.” In fact, the parties’ use of a New Jersey Blumberg form implies exactly the opposite.
Moreover, it is well settled that “§ 7-210 imposes a nondelegable duty on the owner of the abutting premises to maintain and repair the sidewalk.” (Collado v Cruz, 81 AD3d 542, 542 [2011].)
While the general rule is that an owner may transfer its liability to third parties to a commercial tenant if the landlord is “out of possession” and the lease between the parties does not contain a right of reentry, this is not applicable to nondelegable duties imposed on the property owner by a statute or ordinance which require the owner to properly maintain the premises. (James v Blackmon, 58 AD3d 808 [2d Dept 2009]; Nahar v Socci, 35 Misc 3d 1218[A], 2012 NY Slip Op 50738[U] [Sup Ct, Kings County 2012].) Administrative Code § 7-210 is such an ordinance. (Id.) It is described as an ordinance “in derogation of the common law.” (See Determining Property Owner’s Exemption for Sidewalk Liability, NYLJ, Apr. 5, 2012, and Establishing Homeowner’s Exemption in New York City for Snow and Ice Cases, NYLJ, Feb.l, 2012, both by the undersigned.) Herein, whether or not Long retained the right to reenter to inspect and make repairs, he cannot claim to be an out-of-possession landlord in the face of Administrative Code § 7-210, which imposes a nondelegable duty on property owners. Further, he manages the property, particularly regarding the residential *383 apartments, and is clearly not “out of possession.” Finally, the sidewalk, which is for the use of the residential tenants and the public as well as the store’s customers, is not clearly part of the “demised premises” under the lease for the store.
In summary, if the property owner is determined by the trier of fact to be free from negligence, he will not have any basis to make a claim against Gonzalez for indemnification, even if the clause in the lease was enforceable. In the event he is found to have been negligent, and that his negligence was a substantial factor in causing the plaintiffs accident, he cannot be indemnified for his own negligence pursuant to the terms of the lease, as the lease does not satisfy the exception provided by law[2] from the terms of General Obligations Law § 5-321, as is explained above. So either way, Long has no right to seek indemnification from Gonzalez.
With regard to the obligation to repair or replace the cellar doors, it must be pointed out that unless a lease specifically obligates a commercial tenant to be responsible for structural repairs, and identifies what structural repairs are covered, such an obligation will not be implied nor imposed by the courts. (Cucinotta v City of New York, 68 AD3d 682 [1st Dept 2009].) Furthermore, repairs to a public sidewalk are considered structural, not nonstructural repairs. (Cucinotta v City of New York; Wolfe v Gallery Partners, LLC, 2012 NY Slip Op 32301[U] [Sup Ct, NY County 2012].) There are several reported decisions that indicate that this issue is undecided, but in fact, the Appellate Division, First Department has decided this issue, and there is no indication the Second Department would reach a different result.
Despite the statements by Gonzalez and his son that the store is responsible for repairing and maintaining the cellar doors, there is nothing in the lease that establishes that the tenant has any responsibility for any structural repairs or for the repair or replacement of the sidewalk or the cellar doors thereon. The lease merely requires sweeping and keeping the sidewalk free of obstructions, debris, snow and ice. (Lopez v Guei Shun Shiau, 88 AD3d 598 [1st Dept 2011].)
Therefore, Long’s cross claims against Gonzalez are dismissed, and Long’s motion for indemnification by Gonzalez is denied as academic.
*384 Conclusion
The branches of the defendants’ motions seeking summary judgment dismissing plaintiffs action are denied. The branch of defendant Gonzalez’s motion seeking summary judgment dismissing the plaintiffs action as against him on the grounds that he owed plaintiff no duty of care is granted. The branch of defendant Gonzalez’s motion seeking dismissal of defendant Long’s cross claims for indemnification is granted. The branch of the motion by defendant Long seeking summary judgment on his cross claims for contractual indemnification against defendant Gonzalez is denied as academic.
Any relief requested but not specifically addressed herein is hereby denied.

. (Blumberg Form No. A 880, Lease of Business Premises.) The Blumberg catalog indicates that this is a New Jersey form, not a New York form.

. Great N. Ins. Co. v Interior Constr. Corp., 7 NY3d 412 (2006).